## Case No. 1,678.

In re BOSTON, H. & E. R. CO.

[9 Blatchf. 409;[1] 6 N. B. R. 222; 6 Am. Law Rev. 582.]

Circuit Court, S. D. New York. Feb. Term, 1872.[2]

BANKRUPTCY—JURISDICTION OF DISTRICT COURT—PRIOR ADJUDICATION—EFFECT OF.

1. The principles decided in Re Boston, H. & E. R. Co. [Case No. 1,677], affirmed.

2. Under the bankruptcy act of March 2d, 1867 (14 Stat. 517), where petitions for adjudi-

cation are filed in two or more district courts, each having jurisdiction, the court in which the petition is first filed ought to be accorded exclusive jurisdiction over the case.

[See Ex parte Greenfield, Case No. 5,771; Ex parte Leland, Id. 8,228.]

3. An adjudication in bankruptcy was signed by the district judge in New York, on March 1st, but was not made known, or promulgated, or filed, until March 3d. On March 2d, the district court for Massachusetts made a decree adjudging the same debtor a bankrupt: *Held*, that the adjudication in Massachusetts was the prior adjudication.

[Cited historically in Graham v. Boston, H. & E. R. Co., 118 U. S. 168, 6 Sup. Ct. 1,013.]

[Petition for review of the decision of the district court of the United States for the southern district of New York.

[Application for adjudication of bankruptcy. The district court denied the application of Seth Adams for leave to intervene and oppose the application. Case No. 1,679. Reversed.]

Joseph H. Choate, for Adams.

Clarence A. Seward and Charles M. Da Costa, for Alden and the Adams Express Company.

J. Langdon Ward, for bankrupt.

WOODRUFF, Circuit Judge. On the 21st of October, 1870, Seth Adams, a creditor of the Boston, Hartford and Erie Railroad Company, filed his petition in the district court for the district of Massachusetts, alleging that the said company had committed an act of bankruptcy, and praying that it be adjudged a bankrupt, &c. On the 20th of December, 1870, James Alden, also a creditor, presented his petition, with a like allegation and prayer, to the district court for the district of Connecticut. On the 31st of December, 1870, the said James Alden presented his like petition to the district court for the southern district of New York. To these several petitions the company appeared and answered, resisting the application for such adjudication. Pending the petitions, Seth Adams, the petitioning creditor in Massachusetts, applied, both in New York and Connecticut, for leave to intervene and oppose the said applications there made. On the 28th of February, 1871, the company withdrew its answer in each of the said districts, and on the 2d of March, 1871, the district court for Massachusetts adjudged the company bankrupt, by a formal decree of the said court, and issued its warrant to the marshal of that district, in accordance with the statute.

This decree was shown to the district court for Connecticut, by the supplementary petition of the said Adams [the petitioning creditor in Massachusetts];[3] but, notwithstanding such decree, the district court for Connecticut refused leave to Adams to appear to resist the proceeding in that court,

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Reversing Case No. 1,679.]

[3] [From 6 N. B. R. 222.]

and dismissed his petition, and thereupon proceeded to adjudge, and did adjudge, the company bankrupt. On a petition of review, presented by Adams to the circuit court, it was held in Re Boston. H. & E. R. Co. [Case No. 1,677], in September, 1871, that he was entitled to be heard in the district court, and that his petition ought not to have been dismissed. The circuit court thereupon proceeded, upon the facts alleged in his petitions, which were not controverted, to direct that all further proceedings in the district court for Connecticut be stayed, in order that the district court for Massachusetts might thereafter exercise exclusive jurisdiction, for the closing of the estate and distributing the same among the creditors of the corporation.

The like petition of Adams was brought to a hearing in the district court for the southern district of New York, on the 25th of February, 1871, and the district court decided, on the 27th of February, 1871 [Case No. 1,679], that Adams had no standing in court, in that stage of the proceeding, prior to an adjudication of bankruptcy, and that he ought not to be permitted to intervene to resist or stay the proceedings pending in this district; and an order denying his motion was made. But, on the 2d of March, on the application of the counsel for Adams, the court allowed a re-argument, and such re-argument was had on the 3d of March. On the re-argument, and in further support of his claim of title to intervene, the counsel for Adams produced and read in evidence the decree of the district court for Massachusetts, adjudging the company a bankrupt. At the close of the re-argument, the court refused to permit such intervention, and then the following facts appeared, namely, that, after the withdrawal (on the 28th of February) by the railroad company of its answer to the petition of Alden, [4] praying that the company be adjudged a bankrupt, an order or decree adjudging such bankruptcy was drawn and delivered to the district judge; that, on the 1st of March, he signed the same, but retained it in his personal keeping until after the said re-argument, without any notice to either of the parties, or their attorneys or counsel, or to the clerk of the court, of the fact of such signing, and that he [the district judge] [5] endorsed upon such order or decree the words, "Filed, March 1st, 1871. S. B." On denying the application of Adams, after such re-argument, the district judge announced these facts in open court, and delivered the said order or decree, adjudging the company a bankrupt, to the counsel for Alden, the petitioning creditor, and the same was by him delivered to the clerk of the court, to be entered in the minutes and records of the court. Adams thereupon pre-

sented his petition to this court, praying a review and reversal of the said proceedings of the district court, and that all proceedings in bankruptcy against the said company, in the said court, might be stayed, and for other or further relief. Though not material to the questions considered on the review, it is proper to state that the Adams Express Company had, by leave of the district court, become a co-petitioner with Alden, and the proceedings of Adams had, by supplemental petition, been made to apply to the proceedings of both of such petitioning creditors.

It is unnecessary, in disposing of this review, to repeat the observations which were made on deciding the very similar review of the proceedings between the same parties in the circuit court for the district of Connecticut. [Case No. 1,677.] Considerations were then suggested, tending to show the embarrassment, inconvenience and unsuitableness of an endeavor to administer the estate of the Boston, Hartford and Erie Railroad Company, as a bankrupt, and bring the same to a close by collecting and disposing of its assets and distributing its effects among its creditors, by proceedings in several district courts, and, as the case may be, through the instrumentality of different assignees, appointed by these courts; the impracticability of bringing the fund together for one general distribution; the possible, not to say probable, conflict of title between the assignees, the title of each of whom, if valid, must be recognized in all courts; the possible different results of contests in the several jurisdictions respecting debts offered to be proved by creditors whose claims may be disputed; the useless and vexatious trouble and annoyance to creditors, if they be required to go into each jurisdiction and prove their claims; the useless and extraordinary expense and waste of the estate, by subjecting its administration to such multiplied proceedings; [these and other reasons showing] [6] the unfitness and unreasonableness of continuing proceedings in more than one district, and that the case is eminently proper for the application of the general rule, in courts of equity, among courts of co-ordinate jurisdiction, that, when one has first obtained jurisdiction of the subject matter and of the parties, other courts should stay their hand and permit such court to carry the proceeding to a consummation and final disposition of the matter in question—all these and, perhaps, other like considerations, were suggested in the opinion delivered on the review had in Connecticut. Nothing is, I think, more certain, than that congress, in enacting the bankrupt law, did not contemplate any such complication, and, I deem it equally certain, that nothing in its provisions produces any such necessary result. The several district courts of the United States are not acting under

---

[4] [6 N. B. R. 222, gives Adams.]
[5] [From 6 N. B. R. 222.]

[6] [From 6 N. B. R. 222.]

authority derived from separate sovereignties; they are not administering separate systems of laws; they are not charged with a duty to afford special protection to the residents within their local jurisdiction — all which circumstances sometimes lead to conflict of jurisdiction between tribunals of different states, and operate to secure unequal results among parties interested, but residing in different states, domestic or foreign. The district courts act by one authority; they execute the same law; each, in the administration of the estate of a bankrupt, will do precisely what each other district court will do, governed by the same rules and to the same end.

In the opinion referred to, the bankrupt law was examined, and the general orders in bankruptcy, made by the supreme court, were considered, to ascertain, first, whether such proceedings must necessarily, if begun, be continued in more than one district court; if not, then, which district court should be deemed to have priority of jurisdiction and be permitted to go on and complete the administration; and, finally, if the bankrupt, with a view to hinder and embarrass the winding up of the affairs, should lie by silently, or, colluding with one or more of the parties, to produce such embarrassment, would not take any measures to prevent the action of either court, nor call to the attention of either the fact that prior proceedings were pending in another district, whether a creditor could bring the matter to the attention of the court, and ask that the proceedings subsequently commenced, be stayed, in order to avoid the expense, embarrassment and litigation about to arise to the prejudice of creditors, and to the waste of the fund which creditors have a right to share.

The court did not affirm the broad proposition, that, whenever a creditor filed a petition against his debtor, for a decree declaring such debtor a bankrupt, any other creditor was at liberty, and as of course, to appear and claim a right to oppose such adjudication; but it was held, that the court was not hindered from entertaining the application for leave to oppose, by rigid technical rules, governing actions at law inter partes, and that cases might exist in which a creditor should be heard, and, on sufficient grounds, his intervention might properly be effective. It was, accordingly, held, that, it appearing to the district court in Connecticut, on the petition of Adams, that he was the petitioning creditor in the district court in Massachusetts, that his petition was there filed on the 21st of October, 1870, that the petition in Connecticut was filed on the 20th of December, 1870, and that the district court for the district of Massachusetts had, on the 2d of March, 1871, decreed the company a bankrupt, and issued its warrant to the marshal, as required by the act of congress, the district court for Connecticut ought to have received the petition of Adams and stayed its further proceedings. Subsequent reflection, aided by the argument of the review here pending, has deepened the conviction, that the order made in Connecticut was right and proper. The only question, therefore, which is open here, is, whether the district court for Massachusetts should be accorded, either as matter of strict right, or in conformity to the practice of courts of equity having co-ordinate jurisdiction, above adverted to, the same priority of jurisdiction over the district court for the southern district of New York, which was yielded by the court for Connecticut.

In partial review of some of the reasons for the former decision, it is suggested, that there is no express provision of the bankrupt law assigning to either court priority, when two or more petitions are filed against a corporation debtor; and that the sixteenth of the general orders [of the supreme court] [1] in bankruptcy does not apply to corporations at all, but only to individual natural persons, and co-partnership firms composed of individuals. If this were conceded, it would not prevent the conclusion which was there reached, for three reasons: first, all the considerations which should dispose the court to accord to the tribunal which first obtained jurisdiction of the subject matter and of the parties, the continuance of the proceeding to its close, would require, that the district court for Massachusetts, in which the petition against this bankrupt was first filed, should be permitted to have the exclusive administration, without the interference of any other district court; second, by the express provision of the bankrupt law (section 14) the appointment of an assignee, and the transfer of the assets to him, relate back to the commencement of the proceedings, that is, to the filing of the petition, and, thus, the filing of the petition operates not only to render acts done at an earlier period—within six months preceding (section 39)—grounds of adjudication, which would not avail in the other courts, but it also enables the assignee to impeach earlier transactions—within six or four months (sections 14, 35, 39,)—as preferences to creditors, seizures on attachment, executions, &c., and other conveyances, which could not be impeached under later proceedings, and, consequently, the estate to be divided to creditors may be very greatly less, or even swept beyond their reach, if the court in which the petition is first filed be not permitted to administer the estate: and, third, in the only instance in which the act of congress itself appears to contemplate the possibility of proceedings being begun in two different district courts (section 36)—where proceedings are instituted in different districts against co-partners residing in such different districts—it directs, unqualifiedly, that the court in which the petition is first

[1] [From 6 N. B. R. 222.]

filed shall retain exclusive jurisdiction over the case. It would, in the absence of express provision, be altogether fitting to regard this as a proper rule, by analogy, whenever petitions are filed in two or more district courts, each having jurisdiction.

It was insisted, on behalf of Adams, that the sixteenth of the general orders in bankruptcy does apply to a corporation, and to this corporation, either as if it were an individual natural person, or as a joint debtor in the nature of a firm, it being incorporated in several states, and yet having a common stock, common property, common interests, and owing the same debts, by force of the same obligations; but, that the bankrupt was not a corporation, by the laws of the state of New York, and the district court here could have no jurisdiction to proceed against the bankrupt, except on the ground that it carried on business in this state, having its residence or domicil in the state or states by which it was incorporated.

The bankrupt, by an act of the legislature of the state of New York, passed April 25th, 1864 (Sess. Laws N. Y. c. 385), was authorized to purchase the franchise and property of certain corporations organized under the general railroad laws of the state of New York, to construct a railroad in this state, from the town of Fishkill to the boundary of Connecticut, and the act declared that the sale and conveyance should be effectual in law to pass title to the franchise and property sold, and that, on the filing and record of the certificate of sale and conveyance, the said Boston, Hartford and Erie Railroad Company should become possessed of the rights of charter and property sold, conveyed and described, and might have, hold and use the same, in their own right, as a portion of their railway line and property, and have all the rights the corporation making the sale and conveyance had, at the time of such conveyance, to construct and operate a railway within the terminal points designated in the charter of the company making the conveyance, and subject to the laws of this state, passed, or that may be passed, concerning railroad corporations. The purchase and conveyance contemplated by this act were made, and the certificate of conveyance appears to have been filed, and the respondent is alleged to have carried on business in this state in pursuance of the said act.

If the case of such a corporation is not provided for, either in the terms of the act, or by the general orders in bankruptcy, the propriety of giving to the court in which the petition is first filed the administration of the estate, has been sufficiently indicated. If the sixteenth of the general orders in bankruptcy should be construed to apply, then also, so far as the proceedings here proceed upon the carrying on of business in this state, as the ground of jurisdiction, the rule requires, that the first hearing shall be had in the district in which the debtor has his domicil; and, if the peculiar fact of incorporation in more than one state creates an analogy to a firm or copartnership, then, also, the petition first filed must be first heard. In either aspect of the case, neither the general orders in bankruptcy, nor the general principles governing like subjects, nor the fitness or propriety of the thing, requires or permits the continuance of two distinct proceedings and the consequent double administration of the bankrupt's estate. And, once more, if, instead of regarding the act of the legislature of the state of New York as a permission given to a corporation created by the states of Massachusetts and Connecticut to construct, maintain and operate a railroad in this state, it be held that the act and the conveyance in pursuance thereof operated to make the Boston, Hartford and Erie Railroad Company a corporation in New York, and liable to be treated as a corporation created by the laws of New York, then the case now under review is the same in these respects as the case which was under review in the circuit court for Connecticut, for, the company was, in the very terms of the acts of the legislatures of Connecticut and Massachusetts, a corporation in each of those states.

There remains, therefore, no ground for withdrawing the case under review from the operation of the case already decided, unless what took place in the district court in the southern district of New York, prior to the 2d of March, 1871, gives to the district court last named priority and precedence of the district court for Massachusetts, by which, on that day, the respondent was adjudged a bankrupt. Without here enquiring, in view of all that has been suggested in this or the former opinion, whether, if it be regarded as amounting to an earlier adjudication of bankruptcy, it should have the effect last above mentioned, it may be sufficient to consider the prior question: Was it an adjudication of bankruptcy, in any legal sense, which gives such priority?

My conclusion upon this branch of the subject is, that it was not an adjudication prior, in legal effect and operation, to the adjudication in Massachusetts, if that were the sole test by which this review must be decided. This conclusion rests upon two grounds: first, that it had no legal operation or effect until after the adjudication in Massachusetts; and, second, that, if it could be deemed of any significance that the district judge had set his signature to a decree, retaining it within his sole knowledge, possession and control, that significance was wholly suspended and rendered inoperative by the granting of a re-argument of the application of the petitioner herein, for leave to appear and oppose any adjudication in the district court.

1. In the progress of proceedings in bank-

ruptcy, and in proceedings in formal suits, both at law and in equity, it is a common practice for the judge to receive the papers on a motion or on a final hearing, for consideration. It is not to be held, that if, on such consideration, he should, in the first instance, in the privacy of his chambers, or in his library, set his hand to the form of an order or decree, his power over the subject is ipso facto gone, and that act is final. On the contrary, he may—beyond all question, judges often do—prolong his consideration; and, if he find reason to conclude that his first impression was erroneous, he may make the final decision conform to the result of his most full and deliberate examination and reflection. This alone, if correct, shows, that such mere subscription is not, per se, an adjudication of the matter. Nor can it be sustained as an adjudication, by the suggestion, that it is an adjudication which, if he does not change his conclusion, operates, by relation, back to the date of the signing, or, in other words, that it may be regarded as a provisional adjudication, to stand, if no sufficient reason occurs to the judge for changing it. Some observations pertinent to this question, in both aspects, may be found in the opinion in American Wood Paper Co. v. Glen's Falls Paper Co. [Case No. 321], in which an attempt was made to give a precedent effect to a judicial determination by the acting commissioner of patents, because, as he testified, he had made up his mind and endorsed and signed a decision, which he retained to abide the result of further consideration, if a further opposing argument should be presented. A fair and just test of the question may be suggested, by enquiring —when does the time to appeal begin to run, where it is limited to a specific period after the order or decree? If the adjudication were to be deemed operative from the signing by the judge, and while all knowledge thereof was confined to the breast of the judge himself, the whole time to appeal might elapse while he held the order or decree in his own possession, and the right of appeal be thereby wholly defeated. I have no hesitation in saying, that the draft of an order, though signed, remaining in the sole possession and knowledge of the judge, whether for the purpose of further consideration, or for any other reason, is subject to his control; it is not final, so as to conclude him; and, until it is, in some manner, notified to the clerk of the court, or to one of the parties, in such wise that his decision can properly be said to be promulgated or announced, it concludes no one. Decisions of court, announced in open court, are often and properly held to affect parties charged thereby, although the formal order or decree has not been entered; but decisions lying in the breasts of the judges can have no such effect, and the mere fact that the latter have been set down on paper ought to give them no different operation. This is not to be taken to import that all orders must be announced formally in open court, or that orders which may be made out of court must be formally proclaimed, but there must be something tatamount to promulgation or delivery, something of which the parties to be affected can have or can obtain knowledge, before their rights can be said to have received adjudication, something which completes and authenticates the judicial act.

2. The practical construction given by the district court to this act of signing the order, given while the order remained within the sole knowledge and possession of the judge, was in conformity with the view last above suggested. A re-argument of the application of this petitioner was ordered. This can have but one meaning. The application of the petitioner was for leave to appear and oppose the proceeding of the district court to any adjudication touching the bankruptcy of the company. Now, whether he had or had not sufficient grounds for his application, the re-argument proceeded wholly on the idea that, as yet, no such adjudication had been made.

3. The rehearing operated to take away any possible significancy, in this respect, from such private signing of an order. Even when a final decree has been promulgated and entered, a rehearing was held, in Brockett v. Brockett, 2 How. [43 U. S.] 238, to suspend its operation, and an appeal taken within ten days after the refusal, on the rehearing, to open such decree, was, on that ground, held to operate as a supersedeas. In a court of equity, the granting of a rehearing operates to open the decree for further examination, in whole or in part, according to the nature and extent of the grounds for rehearing. Consequa v. Fanning, 3 Johns. Ch. 587, 594, 595; White v. Carpenter, 2 Paige, 217, 262, 263; Ferguson v. Kimball, 3 Barb. Ch. 616.

The result is, that there is nothing in the case presented upon this review which withdraws it from the operation of the decision heretofore made, as above stated, in the district of Connecticut. In that district it was not deemed necessary to reverse the adjudication of bankruptcy which had been made. The same assignees who had been chosen and approved in Massachusetts had also been chosen and approved in Connecticut, and such double sanction could work no prejudice to any party in interest. It was deemed sufficient to stay any further proceedings. Here, as I am informed, an additional assignee was appointed. That appointment does not appear by the papers before me. But that appointment would, of course, fall with a reversal of the adjudication in bankruptcy. I have no doubt of the power of the court to make such order herein as may best secure all interests, and, if the facts occurring are not admitted, to make a proper enquiry to ascertain them. It will be sufficient to reverse all proceedings subsequent to or founded upon the adjudication

of bankruptcy, and stay all further proceedings in the district court.

[NOTE. For the proceedings in Massachusetts, see Cases Nos. 47, 152, and 13,684; in Connecticut, Case No. 1,677. As to the question of appointment of assignees, see Case No. 1,680.]