**SUGGS v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.**

No. 2042.

Circuit Court of Appeals, Tenth Circuit.

Sept. 3, 1940.

Rehearing Denied Nov. 18, 1940.

John Barry, of Oklahoma City, Okl., and John W. Tyree, of Lawton, Okl. (L. M. Gensman, of Lawton, Okl., on the brief), for appellant.

J. B. Dudley and Duke Duvall, both of Oklahoma City, Okl., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The Mutual Benefit Health and Accident Association, herein called the company, issued a health and accident policy of insurance to Sylvanious L. Suggs. The insuring clause insured him against losses resulting independently of all other causes from injuries sustained from purely accidental means. Suicide, sane or insane, was excepted from the policy.

The insured suffered a sunstroke July 14, 1938, while the policy was in full force and effect, from which he died within one hour. Claim was made under Part A for the benefits provided for loss of life resulting from accidental means. The company denied liability, whereupon suit was filed by the beneficiary seeking the recovery of the death benefits in the sum of $2,000 as well as other benefits.

The company filed a motion and also its answer asking for a dismissal of the complaint, upon the ground that it failed to state a claim upon which relief could be predicated. The court, after a hearing, sustained the motion to dismiss. Plaintiff elected to stand upon the petition, and judgment was thereupon entered in favor of the defendant and against the plaintiff, on May 5, 1939.

On May 15, 1939, a motion for a new trial was filed, praying that the court vacate and set aside the judgment and grant a new trial for errors of law occurring and for errors of the court in sustaining plaintiff's motion to dismiss. This motion was overruled by the court on October 2, 1939. The order overruling plaintiff's motion to vacate the judgment and grant a new trial recites that at the time judgment was entered dismissing the petition, plaintiff's counsel in open court inquired of the court as to the length of time allowed under the new rules for the filing of a motion for a new trial; that upon such in-

quiry defendant's counsel in open court stated that it was defendant's contention that a motion for a new trial was not proper. The court expressed its opinion that such a motion was proper and permissible under Rule 59, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to which statement counsel for the defendant took exception.

An appeal was taken December 1, 1939, from the judgment of the court dismissing plaintiff's petition and entering judgment for the company. The company filed a motion to dismiss the appeal on the ground that the appeal was not taken in time. It is contended that the motion to vacate the judgment and grant a new trial was not proper under the Rules of Civil Procedure and therefore did not stay the time within which the appeal must be taken.

■■ It is not necessary to the determination of this question to decide whether in the instant case a motion for a new trial was permissible under the Rules of Civil Procedure. A court has inherent power over its judgments throughout the term, and this goes to the extent that the court may vacate, modify or change its decision on the merits. 34 C.J. p. 268, § 491; Aspen Mining & Smelting Co. v. Billings, 150 U.S. 31, 14 S.Ct. 4, 37 L.Ed. 986; Chicago, M. & St. P. Ry. Co. v. Leverentz, 8 Cir., 19 F.2d 915; United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129; Doss et al. v. Tyack et al., 14 How. 297, 55 U.S. 297, 14 L.Ed. 428. This power to open, vacate or set aside its judgment during the term applies to errors of law as well as to errors of fact. Doss v. Tyack, supra; Zimmern et al. v. United States, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118.

■■ A judgment is not generally treated as final until a motion for a new trial or rehearing which has been entertained by the court has been disposed of. In such case the time for appeal runs from the date of such disposition. United States v. Ellicott, 223 U.S. 524, 32 S.Ct. 334, 56 L. Ed. 535. So if a motion or petition for rehearing is made or presented in season and entertained by the court, the time limit for a writ of error or appeal does not begin to run until the motion is disposed of. Aspen Mining & Smelting Co. v. Billings, supra; Zimmern et al. v. United States, supra; Washington, etc., Railroad Co. v. Bradley, 7 Wall. 575, 74 U.S. 575, 19 L.Ed. 274; Memphis v. Brown, 94 U.S. 715, 24 L.Ed. 244; Brockett et al. v. Brockett, 2 How. 238, 43 U.S. 238, 11 L.Ed. 251; United States v. Steinberg, 2 Cir., 100 F. 2d 124.

■ Where the court has power to further review its judgment, it cannot be said that the judgment is final as long as it is being considered by the court. It makes no difference whether the attention of the court is directed to a further consideration of its judgment by a pleading filed as a matter of right, or by a pleading which has no standing in the case as a matter of law, or springs from the court itself. The fact that the court expresses an intent to further consider the judgment prevents its finality. In Zimmern v. United States, supra, the District Judge announced that he was dissatisfied with the decree and that he contemplated making necessary changes, without announcing what those changes were. In passing upon the effect of this pronouncement upon the time within which an appeal must be taken, the Supreme Court said [298 U.S. 167, 56 S.Ct. 707, 80 L.Ed. 1118]: "We think the effect of that order was to suspend the operation of the decree so that no appeal could be taken from it until it had been amended or confirmed, and its vigor thus restored. Until such action had been taken, it was no longer a decree at all. The judge had plenary power while the term was in existence to modify his judgment for error of fact or law or even revoke it altogether. * * * Finality was lacking until his choice had been announced."

In Larkin Packer Co. v. Hinderliter Tool Co., 10 Cir., 60 F.2d 491, 492, 493, this court said: "Where a motion for a new trial or a petition for rehearing is a matter of right, time is tolled by the filing thereof. * * * Where not a matter of right, or where the petition is informal, time is tolled if the court considers or entertains the petition."

In Re Boston, etc., Ry. Co., Fed.Cas.No. 1,678, 9 Blatchf. 409, 419, the court, in substance, stated that where the court retains a matter for further consideration, it will not be final, because decisions lying in the breast of the judge have no such effect.

■ That at the conclusion of its consideration the court adhered to its former judgment does not alter the situation. Until the final determination was made, it was not a final judgment from which an appeal could be taken. The motion to dismiss the appeal is overruled.

The main controversy centers around whether loss resulting from sunstroke results independently of all other causes from purely accidental means, or whether it is a disease, compensable as provided for in Part K of the policy.

The pertinent portions of the policy, necessary for consideration, are:

"Insuring Clause Sylvanious L. Suggs (Herein called the Insured) of City of Lawton, State of Oklahoma, against loss of life, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time on account of disease contracted during the term of this Policy, respectively, subject, however, to all the provisions and limitations hereinafter contained."

"Part A. Accident Indemnities. Specific Losses."

"If the Insured shall, through accidental means, sustain bodily injuries as described in the Insuring Clause, which shall, independently and exclusively of disease and all other causes, immediately, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay:

| | |
|---|---|
| "For Loss of Life | $2,000.00 |
| For Loss of Both Eyes | 2,000.00 |
| For Loss of Both Hands | 2,000.00 |
| For Loss of Both Feet | 2,000.00 |
| For Loss of One Hand and One Foot | 2,000.00 |
| For Loss of Either Hand | 700.00 |
| For Loss of Either Foot | 700.00 |
| For Loss of Either Eye | 500.00" |

Part H: This provision deals with confining illness and provides for the payment for such illness for one day or more at the rate of $100 per month.

Part I: This provision relates to non-confining sickness and provides payment for such illness at the rate of $50 per month.

"Part K. Covered as Sickness."

"Any accidental injury, fatal or otherwise, resulting in hernia, boils, carbuncles, felons, abscesses, ulcers, infection, septicaemia, ptomaine poisoning, cancer, diabetes, fits, peritonitis, apoplexy, sunstroke, freezing, hydrophobia, sprained or lame back, shall be paid for as provided in Part H or I, anything to the contrary notwithstanding."

It is well settled in Oklahoma that sunstroke is an accident and that death resulting from sunstroke is within the protection of a policy insuring against bodily injury sustained wholly through accidental means. Continental Casualty Co. v. Clark, 70 Okl. 187, 173 P. 453, L.R.A.1918F, 1007; Provident Life & Accident Ins. Co. v. Green, 172 Okl. 591, 46 P.2d 372; Maryland Casualty Co. v. Hazen, 182 Okl. 623, 79 P.2d 577.

The company contends that Part K is restrictive and that it removes from Part A of the policy benefit payments for loss resulting from sunstroke, and that such loss is compensable as provided for under Part K. On the other hand, it is appellant's view that Part K provides benefits in addition to those provided for specifically in Part A of the policy. Were it not for Part K, the resulting loss would be clearly payable under Part A of the policy and the beneficiary would be entitled to the compensation provided for in the event of death.

Where ambiguity exists in a policy of insurance, the policy will be most strongly construed against the company and in favor of the insured. Atlas Life Ins. Co. v. Spitler, 178 Okl. 537, 63 P.2d 82; Great American Indemnity Co. v. Deatherage, 175 Okl. 28, 52 P.2d 827; Employers' Cas. Co. v. Wiggins, Inc., 168 Okl. 295, 32 P. 2d 886; Natl. Life & Acc. Ins. Co. v. May, 170 Okl. 198, 39 P.2d 107. The insuring clause insured Suggs against certain losses resulting from any accidental cause except suicide, sane or insane. It is general in its provisions and covers all accidents save the one exception.

Part A of the policy promises to pay for the loss of life, occurring within thirteen weeks, resulting from purely accidental causes, the sum of $2,000. It also is complete within itself and purports to exhaust the subject and the method of payment for the losses specifically covered therein, resulting from accidental causes covered by the insuring clause. It contains no limitations, exceptions or reservations. It refers to no other parts or provisions of the policy. Had it been the intent of the parties to exclude from its provisions payment for death resulting from sunstroke, here was the place to say it. It would have been easy to make the exception by reference to that part of the policy covering such loss. Standing by itself it is a com-

plete method of dealing with the losses provided therein resulting from all accidents covered by the insurance clause.

 While sunstroke is an accident, it is also treated as a disease. Accidental injury may result in losses specifically covered by a policy of insurance, such as death, and also in a lingering illness. It is possible that as a result of sunstroke one may be confined to the hospital and be ill for a long period of time, require the attendance of physicians and nurses, and ultimately recover or die. So one may, as a result of an accident, lose his hand and the injury may also result in septicemia. In the one instance, death resulting from sunstroke would be a loss payable under the policy if it occurred within thirteen weeks. On the other hand, if one suffered a sunstroke and lingered for six months and then died, he would recover nothing under Part A for loss of life, but would be entitled to the sick benefits under Part K. It was within the power of the parties to contract that in addition to the losses enumerated in Part A, they would pay for other losses suffered, such as a lingering sickness or illness. It is to be noted that Part A is entitled: "Accident Indemnities. Specific Losses," while Part K is entitled: "Covered as Sickness."

It is more reasonable to assume that by Part K the parties intended to provide additional benefits for illness resulting from an accidental injury not covered by Part A, rather than that they intended thereby to nullify the specific benefits unconditionally promised in Part A. To hold that Part K is restrictive and limits the benefits provided for specific losses for all practical purposes would in many instances completely nullify the provisions of Part A. As was said in Frenzer v. Mutual Benefit Health & Accident Ass'n, 27 Cal.App. 2d 406, 81 P.2d 197, 202: "It would hardly be possible for anyone to receive an accidental injury which subsequently caused his death to go through a period of thirteen weeks without developing some one of the specific conditions named in part K."

This provision has been construed by the Supreme Court of California in Frenzer v. Mutual Benefit Health & Accident Ass'n, supra, and by the Supreme Court of Virginia, in Mutual Benefit Health & Accident Ass'n v. Ryder, 166 Va. 446, 185 S.E. 894, and in each case it was held that Part K was an extension of coverage rather than

one of limitation. With that construction we agree.

The judgment of the trial court is reversed and the cause remanded with instructions to grant Suggs a new trial.