**STATE OF OKLAHOMA ex rel. J. Woodrow WILSON, Plaintiff,**

v.

**G. T. BLANKENSHIP, Attorney General, State of Oklahoma, Sun Oil Company (formerly Sunray DX Oil Company) a foreign corporation, Kerr-McGee Corporation, Phillips Petroleum Company, Riffe Petroleum Company, Baxter Land Corporation (formerly Inland Asphalt, Inc.), Defendants.**

**Civ. No. 69–73.**

United States District Court,
W. D. Oklahoma.

Oct. 31, 1969.

Paul W. Brightmire, Tulsa, Okl., for plaintiff.

Dale Cook and J. A. O'Toole, Oklahoma City, Okl., for defendant G. T. Blankenship.

Truman Rucker, J. P. Greve and John A. Ladner, Jr., Tulsa, Okl., for Sun Oil Co.

Coleman Hayes, Oklahoma City, Okl., for Kerr-McGee Corp.

R. B. McDermott, Tulsa, Okl., S. E. Floren, Bartlesville, Okl., and Edward J. Fauss, Oklahoma City, Okl., for Phillips Petroleum Co.

James R. Eagleton, Tulsa, Okl., and James R. Eagleton, Oklahoma City, Okl., for Riffe Petroleum Co. and Baxter Land Corp.

## OPINION

BOHANON, Chief Judge.

This civil action was originally filed in the District Court of Oklahoma County, Oklahoma, and timely removed to this Court. The plaintiff instituted the action as a citizen and taxpayer under the provisions of §§ 372 and 373 of Title 62 O.S.1961, authorizing taxpayers, under certain conditions, to institute suits on behalf of the State. Plaintiff in his Amended Complaint charges that the defendants, and each of them, entered into

an unlawful and joint agreement to reduce the amount of a judgment theretofore obtained by the State of Oklahoma against the defendants, except Blankenship, and further that the defendant Blankenship, as the Attorney General for the State of Oklahoma, had no lawful authority to bind the State to such an agreement; that the other defendants knew of such lack of authority; nevertheless, they agreed among themselves to achieve their objective by illegal means in procuring an agreed order to effectuate the alleged unlawful object, and in general seeks a judgment against all of the defendants here for double the amount of the reduction in the prior judgment, or a total of $5,120,411.60. In essence, this constitutes the plaintiff's claim.

This present action is ancillary to another suit in this Court instituted by the then Attorney General on behalf of the State of Oklahoma entitled State of Oklahoma, ex rel. Charles Nesbitt, Attorney General v. Allied Materials Corporation, et al. No. 65–344, said action being one brought under the Federal Antitrust Laws for damages and attorneys' fees. In action No. 65–344 the State of Oklahoma, through the Attorney General, prior to trial, reached a nominal settlement with certain of the named defendants in said action, to-wit: Allied Materials Corporation; Apco Oil Corporation; Monarch Refineries, Incorpo-

rated, and Carry-Baxter-Kennedy, Incorporated, for the total sum of $33,050.-00, and a proper dismissal was filed as to these parties. After a lengthy trial before a jury, and based upon the jury's verdict, the Honorable Luther B. Eubanks, District Judge, entered a judgment against named defendants in that case for a sum of $1,548,371.31 and trebled the amount of the jury verdict as provided by 15 U.S.C.A. § 15 less the sum of $33,050.00 which sum the State of Oklahoma had received as compromise settlements from the parties dismissed as heretofore mentioned, and fixed a reasonable attorneys' fee in the sum of $285,000.00, all as provided by 15 U.S. C.A. § 15.

Thereafter each of the defendants except the Attorney General filed motions for new trial for judgment notwithstanding the verdict of the jury, which motions presented intricate, complicated and serious questions of law raising many alleged serious trial errors, the sufficiency of the evidence, errors in admission of evidence and many other alleged errors not necessary to be mentioned here, but which included alleged excessiveness of the verdict, and asked the Court as an alternative to a new trial, to order a remittitur. During the pendency of the defendants' respective motions for new trial and before passing upon said motions, the Trial Judge entered an Order on January 15, 1969,[1] the

---

1. ORDER

"On this 15th day of January, 1969, the above entitled cause was heard upon the several separate motions of the defendants for judgment notwithstanding the verdict or for a new trial.

Upon consideration of the said motions the Court finds that the verdict of the jury and the judgment heretofore entered thereon upon September 24, 1968, are in excessive amount in view of the evidence.

The Court finds that the verdict rendered by the jury in the amount of $1,548,371.31 is excessive by the sum of $704,021.31; that the evidence supports a verdict in the sum of $844,350.00; that the trebled judgment entered on September 24, 1968, upon and pursuant to the verdict, after credits for prior settlement

received, is excessive by the sum of $2,-112,063.93; and that the said verdict and judgment should be remitted in conformity to this finding.

IT IS THEREFORE ORDERED AND ADJUDGED that if the plaintiff, within five days of the date of this order, shall execute and file with the Clerk of the Court a remittitur in the amount of $2,112,063.93, together with all interest accrued to the date of this order, the said judgment heretofore entered on September 24, 1968, is modified, reduced and reentered as of this date in the total amount of $2,500,000.00, together with interest from the date of this order at the rate of ten percent (10%) per annum until paid, and attorneys' fees and costs as hereinafter fixed and allowed.

State of Oklahoma, through the Attorney General, G. T. Blankenship, Burck Bailey and Lester M. Klaus, special counsel for the State of Oklahoma and John H. Walters, General Counsel, Department of Highways, State of Oklahoma, approved and filed the ordered remittitur, and on the same date, through the same attorneys for the State of Oklahoma, and upon payment of the judgment as remitted, a satisfaction of this judgment was entered, thus closing the case.

It is this final Order dated January 15, 1969, which the plaintiff in the present case attacks on the grounds: (1) that the judgment entered in Case No. 65–344 on September 24, 1968, was a final judgment, and (2) the Attorney General had no legal authority to agree to the remittitur or the satisfaction of judgment, or otherwise, and (3) the Attorney General and other lawyers representing the State by negotiations with attorneys for defendants looking to a final settlement conspired together to do an unlawful thing; that is, to settle a final judgment in favor of the State for less than the amount thereof.

The parties to the action at bar have each filed separate Motions for Summary Judgment, and each have agreed that no evidence will be offered other than the records of the Court and exhibits in the present case and the records and exhibits of the Court in civil action No. 65–344, together with the statements and admissions made by the parties at pre-trial hearing and the sworn testimony given at such pre-trial hearing.

The first question to be considered is the legal effect or status of the judgment in Case No. 65–344 filed September 24, 1968, that is, was this a final judgment or not, while the defendants' respective Motions for New Trial were pending and then undecided. This Court holds that such judgment was not final, but was subject to change, correction, modification or the granting of a new trial, or other appropriate action.

In Suggs v. Mutual Benefit Health and Accident Association, 115 F.2d 80 (10 C.A.), a case arising in Oklahoma, the Court said at page 82:

"A judgment is not generally treated as final until a motion for a new trial or rehearing which has been entertained by the court has been disposed of. In such case the time for appeal runs from the date of such disposition. United States v. Ellicott, 223 U.S. 524, 32 S.Ct. 334, 56 L.Ed. 535. So if a motion or petition for rehearing is made or presented in season and entertained by the court, the time limit for a writ of error or appeal does not begin to run until the motion is disposed of. (citing cases)

Where the court has power to further view its judgment, it cannot be said that the judgment is final as long as it is being considered by the court. It makes no difference whether the attention of the court is directed to a further consideration of its judgment by a pleading filed as a matter of right, or by a pleading which has no

IT IS FURTHER ORDERED that if such remittitur be filed by the plaintiff, and upon such filing, the several motions of the defendants for judgment notwithstanding the verdict or for a new trial be and the same are overruled as of the date of such filing.

IT IS FURTHER ORDERED that pending the filing of such remittitur, and if the same be not filed within the time provided, jurisdiction to act with respect to the said motions of the defendants is retained for the further action of the Court.

IT IS FURTHER ORDERED that attorneys' fees allowable to plaintiff and its

counsel be fixed and assessed against the defendants in the sum of $285,000.00, which the Court finds to be reasonable in amount notwithstanding the remittitur hereinbefore ordered. Upon stipulation of the parties made and entered into in open court, it is ordered that the amount of said attorneys' fees be paid by defendants directly to Burck Bailey and Lester A. Klaus, counsel for plaintiff.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff have and recover its costs as previously taxed in the amount of $9,800.38.

/s/ Luther B. Eubanks

United States District Judge"

standing in the case as a matter of law, or springs from the court itself."

The Court then quotes from the case of In Re Boston, etc., Ry. Co., Fed.Cas. No.1,678; 9 Blatchf. 409, 419:

"the court, in substance, stated that where the court retains a matter for further consideration, it will not be final, because decisions lying in the breast of the judge have no such effect."

And in Methvin v. Methvin (1942), 191 Okl. 177, 127 P.2d 186, at page 188, the Court said:

"In the case of Price v. Sanditen, 170 Okl. 75, 38 P.2d 533, 534, we said: 'We do not believe that it was the intention of the lawmakers that the five-year period provided in section 442, supra, 12 O.S.1941, § 735, should begin to run until a judgment becomes final. Section 416 O.S.1931, 12 O.S.1941 § 681, defines a judgment as follows: "A judgment is the final determination of the rights of the parties in an action." '

We pointed out further that the test of a final judgment is whether or not the court's jurisdiction has been exhausted as to matters decided and that there could be but one final judgment in any action. It was further pointed out that the fact that an execution may be issued on a judgment does not by any means determine the finality of such judgment. It is the general rule that a judgment is not final in the sense that it is conclusive upon the parties until the losing party has failed, within the time allowed by law to perfect his appeal, or having properly perfected his appeal, until the highest court whose decision is invoked by either party upholds the decision of the trial court. Annis v. Bell, 10 Okl. 647, 64 P. 11; State [ex rel. Mason] v. Schmoll, Mo.App., 37 S.W.2d 972, and authorities therein cited."

Having determined that the judgment of the Court in Case No. 65–344 was not final because the same still rested in the bosom of the Court upon the motions for new trial and the request for remittitur, did the Attorney General for the State of Oklahoma have authority to file the remittitur as ordered by the Court and to accept in satisfaction the reduced amount?

Title 74 O.S.A. § 18 provides:

"The Attorney General shall be the Chief Law Officer of the State."

Section 18b provides:

"The duties of the Attorney General as the Chief Law Officer of the State shall be:

\*    \*    \*    \*    \*    \*

(b) to appear for the State and prosecute and defend all actions and proceedings in any of the Federal Courts in which the State is interested as a party."

The plaintiff contends that the Attorney General had no authority to remit any portion of the judgment in Case No. 65–344 in view of Article V, § 53 of the Okl. Const., which in material part provides as follows:

" \* \* \* the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation, or individual, to this State, or any county or other municipal corporation thereof."

The Supreme Court of the State of Oklahoma has said:

"In the absence of explicit legislative or constitutional expression to the contrary, the attorney general possesses complete dominion over every litigation in which he properly appears in the interest of the state whether or not there is a relator or some other nominal party." Billington, County Clerk v. L. L. Weaver, Sheriff, et al., 440 P.2d 700.

In Merchants Mutual Bonding Company v. State of Oklahoma ex rel. Charles Nesbitt, Attorney General, 438 P.2d 931 (Okl.1968) at page 934 the Court said:

"We have previously held that there is a rebuttable presumption that any at-

torney is authorized to appear for the person who he is representing in court. In re Hess' Estate, Okl., 379 P.2d 851. In the instant case, the defendant offered no evidence to rebut this presumption that the Attorney General had authority to represent the State, nor did defendant offer any evidence requiring the court to challenge the Attorney General's presumed authority. * * * For these reasons, the defendants second proposition is not well taken."

The power of the Attorney General to compromise suits is discussed in 7 Am. Jur.2d, Attorney General, § 15 which states:

"Ordinarily, the Attorney General, both under the Common Law and by Statutes, may control and manage all litigations in behalf of the State and is empowered to make any disposition of the State's litigation, which he deems for its best interest. His power to effectively control litigation involves the power to discontinue if and when, in his opinion, this should be done.

* * * and the Attorney General may enter into compromises and settlements of suits in which the state is an interested party, which will be binding on the State where there is doubt and an honest dispute as to the State's rights, and the compromise or settlement is a bona fide one, at least when he acts with the approval of the executive head of the department having charge of the matter involved in the suit."

By letter (defendants' Exhibit 2) dated December 20, 1968,[2] and by letter (defendants' Exhibit 1) dated January 10, 1969,[3] the Governor of the State of Oklahoma specifically authorized the Attorney General to conduct negotiations for settlement and disposition of this case. Furthermore, the General Counsel for the Department of Highways, State of Oklahoma, Mr. John Paul Walters, approved the remittitur filed and, likewise, signed, executed and approved the satisfaction of judgment. The Department of Highways of the State of Oklahoma was a department principally affected by that suit (65-344) or principally concerned with its outcome.

2.                    "December 20, 1968
The Honorable G. T. Blankenship
Attorney General of Oklahoma
112 State Capitol Building
Oklahoma City, Oklahoma
Dear Mr. Blankenship:
  We have had ocasional conversations in connection with the asphalt cases and the possibility of settling this litigation. I am advised by attorneys that the governor has no legal authority to carry on these negotiations. In addition. I have no desire to participate in them or to influence you in any participation that you or your representative have in these negotiations.
  No conversation that we have had or any conversations that you may have had with Tim Dowd or any other staff member should have any bearing on your decision of your negotiations. I consider the disposition of these cases to be within your authority and your sole responsibility.
            Sincerely,
            /s/ Dewey Bartlett
            Dewey F. Bartlett
            GOVERNOR

DFB/bf
cc:  Mr. Burck Bailey
     Attorney at Law
     1st National Building
     Oklahoma City, Oklahoma"

3.                    "January 10, 1969
The Honorable G. T. Blankenship
Attorney General of Oklahoma
112 State Capitol Building
Oklahoma City, Oklahoma
Dear General Blankenship:

You have communicated to me your intention to settle the asphalt case for the sum of Two and One-Half Million Dollars. The attorney fee is to be handled as a separate item.

As I stated in my letter to you of December 20, 1968, 'I consider the disposition of these cases to be within your authority and your sole responsibility.'
            Sincerely,
            Dewey F. Bartlett
            GOVERNOR
DFB/bf"

The plaintiff takes the position that the Court's judgment of September 24, 1968, in Case No. 65–344 was a final judgment, although as noted above motions for new trial and for remittitur were pending and undisposed of, and, therefore, the Attorney General under the Oklahoma Constitution, Article V § 53, supra, had no power to release or extinguish—* * * the indebtedness * * * to the State, and consequently the Order directing a remittitur, the filing of the remittitur, and the release and satisfaction of judgment were nullities. Plaintiff concedes that if the judgment was not final and there is a disagreement or doubt concerning the claim, or a good faith dispute as to the claim, then the Attorney General and other interested parties could lawfully agree to a settlement or a compromise of their differences, and this was the posture of plaintiff's claim and the situation existing when the remittitur was filed.

At pre-trial conference held August 11, 1969, in considering the prior judgment and the events leading up to the Order of January 15, 1969, the following sworn statement was made:

"MR. McDERMOTT: All right, sir. The one discussion that I recall at which most of counsel were present took place on the Friday or Thursday preceding the 13th, at Oklahoma City, in Mr. Coleman Hayes' office, is my recollection.

Mr. Hayes was there, Mr. Rucker was there, I was present, Mr. Eagleton was present; and I am confident that there were others.

Just a moment. Were you there, Mr. Floren?

Mr. Floren was there and possibly others. At that discussion, the attorneys for the State, in the person of Burck Bailey, attended and the meeting was in consultation with Mr. Blankenship from time to time through Bailey, by telephone. It's my recollection that he was not there.

At this point I'd say the discussion had reached levels that it was apparent that a point of accommodation between the parties might well be reached which would result in the disposition of pending questions respecting the previous judgment and the case itself.

And it was at this point that, my recollection is, that I made the suggestion—I may not have; it may have been one of the others—that it was time to go before the Court and advise him of what was toward, and the situation.

And I believe Mr. Hayes either called the Court or at noon recess went to the courthouse to ask Judge Eubanks for an appointment for the whole group of counsel in the case to appear before him, and returned to say that he did have such an appointment in the afternoon of January 13.

We then, at my suggestion I believe again, to Mr. Bailey, requested that Mr. Blankenship attend that meeting; and we did meet on Monday afternoon with Judge Eubanks in his conference room.

At that meeting counsel for everybody was present, and the State was represented both by Mr. Bailey and Mr. Blankenship himself. I am uncertain whether the attorney for the State Highway Commission was present at that session or not, but I believe that he was. He was invited, certainly.

At that time we reported to the Court that there had been an exchange of viewpoints with respect to pending motions, particularly with respect to the excessive character of the verdict and judgment, and we told him precisely what we had done so far; and that it appeared that there was an area where, if a judgment of remittitur entered the case might be ended to the satisfaction of all concerned.

He told us that he was very happy that this had happened.

At that point I told him there was no agreement to pay or to accept anything, except upon a final and conclusive judgment in the court, and I

made the statement that Mr. Brightmire has examined in detail, that it was my opinion and that I had advised Phillips that in no circumstances could we pay anybody anything in this case except in satisfaction of a final judgment.

Others adopted that viewpoint at that time. I cannot repeat precisely who spoke, but I do know that generally the other defendants adopted that position."

And that is the sum of the conference; but Judge Eubanks was advised of everything that had transpired at that time.

\*   \*   \*   \*   \*   \*

THE COURT: Well, I think here's a, could be a very vital point in this whole affair, and for the benefit of all parties, you, Mr. Brightmire, should accept this statement as his proof, either under oath or not under oath, and if you don't want to accept it not under oath, then I think he should be be put under oath either now or at some later time, and to make it such proof as would be appropriate in a court of law.

MR. BRIGHTMIRE: Your Honor, could we do it this way? When you say 'will I accept it?' Certainly I can. I do agree that is his statement as to what occurred without any further proof on the matter. I didn't want to get in the position of stipulating that what he says is true; see what I mean?

THE COURT: I understand that. That wouldn't be for you. The Court or no one would ask you to do that.

But this should be a statement that would have the effect of proof, legal proof, under oath; and if you would stipulate that, all right.

MR. McDERMOTT: Judge, we can cover that very simply.

THE COURT: I think you had better, unless you want to have a full hearing. Do you want to have a hearing?

Well, I don't know of any other, from what has been said here this morning, is there any other testimony that anybody wants to put on? If there is, why we will set it down.

MR. BRIGHTMIRE: I didn't know of any. The parties had discussed this previously. I understood this is the way it is going to be handled. Really we are probably, I think, maybe making a little too much out of Mr. McDermott's statement. I don't see that it makes too much difference one way or another. I did not want to stipulate that this was true, some of the conclusive matters that he stated. I think that we are all right.

I think that we have understood that we will accept it as proof. That's what the Judge said. That's what you have stated in the record.

MR. McDERMOTT: If there is any difficulty about the form of the proof, I am prepared to make oath to it at this time.

THE COURT: Well, swear Mr. McDermott in. That does bring it to the status of proof.

All right.

LaDANA SMITH (Deputy Court Clerk): You do solemnly swear your testimony will be the whole truth and nothing but the truth, so help you God.

MR. McDERMOTT: I do. And, your Honor, on my oath, my statement which I made to you is correct."

The Court specifically finds, based upon the entire record and specifically the statement made by Mr. McDermott that there was at the time of the entry of the Order of the Court on January 15, 1969, in Case No. 65–344, an honest, good-faith dispute and doubt between the parties as to the amount of money due to the State of Oklahoma, if any, and a good-faith dispute between the parties as to the hazards and doubtfulness of the validity of the claim of the State against the defendants. The Court further finds there was no conspiracy, as alleged. A

similar situation was presented to the Supreme Court of Oklahoma in National Bank of Commerce v. State ex rel. Garrison, 368 P.2d 997 (Okl.1962). In this case the County Attorney brought an action against the bank for statutory penalties allegedly attributable to the bank's owning a certain ranch in Washington County for more than seven years, and following a trial of the case, judgment was entered in favor of the State for a penalty of $2,402.70, together with interest at ten percent (10%) from July 25, 1955, and an attorneys' fee of $600.-68. Prior to the filing of this action, a prior action had been filed in the District Court of Tulsa County for the same penalties against the bank. After the bank had answered and the State had filed a reply, the parties reached an agreement to the effect that the State should take judgment for ⅔ of the amount claimed, and this settlement agreement was in effect carried out by a formal judgment of the District Court of Tulsa County, Oklahoma, and the bank contended that the doctrine of res judicata applied and that the State was bound by the settlement agreement, and the Court at page 1002 said:

"It is settled law in this jurisdiction that where the amount of a claim is in good faith disputed and the interested parties agree upon a compromise, the settlement so made constitutes a bar to any further recovery on the claim. See Jarecki Mfg. Co. v. Cimarron River Oil & Gas Co., 69 Okl. 104, 170 P. 252; L. C. Jones Trucking Company, Inc. v. Jenkins, Okl., 313 P.2d 530, and cited cases.

The law being as stated, it is unnecessary to here determine whether the defense asserted by bank to the Tulsa County case was well founded and it is only necessary to determine whether the defense was asserted in good faith. Our examination of the record satisfies us that the defense was urged in good faith and unless Art. V, Sec. 53 served to prohibit the settlement, same serves as bar to the instant action.

In referring to constitutional provisions of the tenor of the above cited article, it is stated in 81 C.J.S. 'States' § 111, p. 1083 that 'It is not, however, intended to embrace a release of claims doubtful or hazardous which the state might hold against a corporation or individual, and so claims which are unliquidated and uncertain in amount may be compromised by the state at any time before final judgment.' See also State ex rel. Wilson, Attorney Gen. v. Young, 44 Wyo. 6, 7 P.2d 216, 81 A.L.R. 114 and cited cases.

In defining the word 'unliquidated' it is stated in part, 91 C.J.S. at p. 502 that 'the essence of the term is uncertainty, and it is defined as meaning unascertained as to amount, or undetermined.'

We are convinced that at the time settlement was reached, the claim asserted by the State must be considered as unliquidated and that the matter of whether the State could recover the full amount of the claim was doubtful. We are, therefore, of the opinion that Mr. Williams as the State's representative was not prohibited by Art. V, Sec. 53 from entering into a compromise agreement concerning the claim and that said agreement which was fully executed serves to bar the claim that State asserts in the instant action.

The court found that extrinsic fraud served to vitiate the judgment in the Tulsa County case, and we assume that this finding was also directed to the settlement upon which the judgment was based. The record, in our opinion, wholly fails to show that the settlement or judgment was tainted by extrinsic fraud. To the contrary, the record shows that those representing the parties, as did the trial judge, fully understood each other's claim and position."

In the case before us now the Court, upon examination of the records before it, finds that the agreement between the parties, later approved by the

Court, to settle their differences and which resulted in the order of January 15, 1969, constituted a good-faith claim of the parties to settle an unliquidated, doubtful and hazardous claim, and having been fully executed constitutes a bar to the plaintiff's asserted claims.

The defendants assert by their responsive pleadings that the judgment of January 15, 1969, in Case No. 65-344, constitutes a bar to the present action.

██ A final judgment rendered in a prior case where the Court had jurisdiction of the subject matter and of the parties, constitutes a bar under the doctrine of res judicata, absent fraud in its procurement, and is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. It is admitted, and the record clearly shows that the Court in Case No. 65-344 had jurisdiction of the parties before it and of the subject matter of the action. The parties in the present case were all parties in Case No. 65-344 with the exception of G. T. Blankenship, Attorney General, in his individual capacity, and the subject matter in the present case is the same as that adjudicated in Case No. 65-344. As to G. T. Blankenship in his individual capacity, he is sufficiently in privity with both the State and the defendants pleading the bar of the final judgment of January 15, 1969, to claim the benefits of that adjudication, and the State itself is barred as to the substance of its claim, regardless of the persons to whom the same is addressed.

The plaintiff here does not plead or assert that there was fraud in the procurement of the final judgment in Case No. 65-344 but pleads only that the same was procured through a civil conspiracy between the defendants in this action. The Court has already held that there was no such conspiracy, and the Court finds, although it perhaps is unnecessary, that there was no fraud of any kind, type or nature in the procurement of the judgment in Case No. 65-344. The funda-mental and underlying principles of the doctrine of res judicata are well stated in 46 Am.Jur.2d, p. 558, § 394 and § 395:

"§ 394. Statement of doctrine. Literally, res judicata means a matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment. As stated in many cases, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

To adopt the language of the English court in announcing the doctrine in an early case, which has been frequently repeated by the courts, the judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court. In speaking of this rule and the distinctions which appear therein, it has been said that this brief but comprehensive summary furnishes a rule for every case that any complication of circumstances can produce. On the other hand, it has been declared that when a case lies hard by the line of cleavage between what is and what is not res judicata, it may be a nice question to determine on which side of the line the case falls.

§ 395. Basis of doctrine. The doctrine of res judicata is a judicially created doctrine, which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquility. Public policy, judicial orderliness, economy of judicial time, and the interest of litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain in repose, that inconsistent judicial decisions

shall not be made on the same set of facts, and that there be an end to litigation which, without the doctrine of res judicata, would be endless.

The doctrine of res judicata is but a manifestation of the recognition that endless litigation leads to confusion or chaos. The doctrine reflects the refusal of the law to tolerate a multiplicity of, or needless, litigation and is based on the worthy premise that the interest of the proper administration of justice is best served by limiting parties to one fair trial of an issue or cause. It rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.

The doctrine of res judicata not only puts an end to strife, but recognizes that certainty in legal relations must be maintained. It produces certainty as to individual rights and gives dignity and respect to judicial proceedings. It is considered that a judgment presents evidence of the facts of so high a nature that nothing which could be proved by evidence aliunde would be sufficient to overcome it, and therefore it would be useless for a party against whom it can be properly applied to adduce any such evidence, and accordingly he is precluded by law from doing so."

■ For a statement of the doctrine in courts of the United States see Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898, and American Law Institute Restatement of the Law of Judgments, § 47 and § 48; a judgment is no less a bar even though erroneous. Restatement of the Law of Judgments § 48, supra. Likewise, a judgment entered by consent, or if erroneous, will be given no less nor greater force or effect than it would have had had it been rendered after protracted litigation, or if erroneously decided, 30A Am.Jur. p. 255, § 148. Lewis v. George C. Wilson, et al., 151 U.S. 551, 14 S.Ct. 419, 38 L.Ed. 267; Cobb v. Killingsworth, 77 Okl. 186, 187 P. 477; State of Oklahoma ex rel. Jennings v. Ray County Treasure et al. (10 C.A.), 87 F.2d 181; Spencer v. Gypsy Oil Company, 142 F.2d 935 (10 C.A.).

From the foregoing it is quite apparent under the law that plaintiff, State of Oklahoma, is precluded from questioning the judgment of January 15, 1969, in Case No. 65–344, that judgment being final, satisfied and released in full, and the State of Oklahoma has received and still retains the benefit thereof.

The plaintiff contends that the attorneys' fee fixed by the Court in the sum of $285,000.00 in Case No. 65–344 was wrongfully ordered paid directly to the attorneys who represented the State. From what has heretofore been stated, it is probably unnecessary to touch upon this question, however, it will be discussed briefly. The bar of the former judgment heretofore discussed applies equally to the attorneys' fees which constitutes a part of the judgment. The only complaint made by the plaintiff is that the attorneys' fee was ordered paid direct to the attorneys instead of going through the State channels and then to the attorneys. Title 15 § 15 states that the injured party in an antitrust suit "shall recover threefold the damages by him sustained and the cost of the suit, including a reasonable attorney fee." It is not clear from this statute whether the attorney's fees must be paid to the injured party or to the attorney. In any event, the statute does not prohibit the payment of the attorney's fees awarded direct to the attorney where the circumstances so justify.

An article in Washington University Law Quarterly 102, entitled "The Nature of 'A Reasonable Attorney's Fee' In Private Anti-trust Litigation," says:

"The courts have not agreed upon whether the statute requires an award

directed to the plaintiff or his attorney. * * * [Other courts] operate under the assumption that the award is to the attorney * * *. This latter view is so strongly held by some courts that it has been decided that no appeal of the fee would lie because the attorney had indicated to the trial court that he was satisfied, and that the only true test is: 'What, in the opinion of the trial judge, after considering all the factors in the case, would be a reasonable charge for the services of plaintiff's counsel?' "

■■ Assuming, arguendo, that the fee should have been paid to the State as plaintiff and not directly to the attorneys, and thus erroneous, the judgment is nevertheless final on this issue, binding upon the State and is immune from collateral attack in this action. Moreover, the plaintiff, State of Oklahoma, is in no position to complain for it certainly was not entitled to recovery, in addition to its damages, attorneys' fees which it had not expended and which the Court found was reasonable in the circumstances. The State lost no money, and the attorneys received only that which they were entitled to receive. Payment direct to the attorneys, under the facts here, was not in error. The judgment, assuming it may be erroneous, which I do not, is final. American Law Institute Restatement of the Law of Judgments, § 48 cases, supra.

Although the plaintiff did not so allege in the Complaint, he does in this Brief by innuendo make the claim that Judge Eubanks, the Trial Judge in Case No. 65–344, was misled by defendants into entering the order or final judgment of January 15, 1969, in that defendant did not make a full disclosure of all the facts leading up to this judgment. This is a serious charge leveled against highly respectable, capable and conscientious counsel who have practiced before this Court for many years and an affront to my brother Judge Eubanks. The record is devoid of the slightest evidence that would reflect on the integrity of counsel, and most certainly Judge Eubanks would not have entered the order in this or any other case without knowing fully the contents of such order and its ultimate consequences. On the contrary the record clearly shows that a full disclosure of all of the surrounding facts was made to Judge Eubanks, and he was fully aware of the contents of the Order which he signed. The plaintiff made no attempt to prove the contrary. The assertions made by the plaintiff in this regard border on an attempt of plaintiff to mislead this Court. The Court finds that there was no attempt to mislead Judge Eubanks, and in fact he was not misled or misadvised by counsel.

The defendants claim that the plaintiff, J. Woodrow Wilson, is not a proper party relator to bring this action on behalf of the State of Oklahoma. In view of what has been decided above, it is unnecessary to reach this question.

An appropriate judgment will be entered denying the relief sought by plaintiff.