## SPENCER v. GYPSY OIL CO. et al.
### No. 2754.

Circuit Court of Appeals, Tenth Circuit.
May 22, 1944.

Rehearing Denied June 24, 1944.

Chas. B. Rogers, of Tulsa, Okl., for appellant.

James B. Diggs, of Tulsa, Okl. (William C. Liedtke, Russell G. Lowe, Redmond S. Cole, C. L. Billings, and James B. Diggs, Jr., all of Tulsa, Okl., on the brief), for appellee Gypsy Oil Co.

Harold E. Rorschach, of Tulsa, Okl. (Jack L. Rorschach, of Vinita, Okl., on the brief), for appellee F. A. Gillespie & Sons Co.

R. H. Wills, of Tulsa, Okl. (J. H. Crocker, J. P. Greve, Ben Hatcher and J. H. Woodward, all of Tulsa, Okl., on the brief), for appellee Mid-Continent Petroleum Corporation.

Villard Martin, of Tulsa, Okl., for Cushing Gasoline Co.

Before BRATTON and HUXMAN, Circuit Judges, and RICE, District Judge.

HUXMAN, Circuit Judge.

This is another chapter in the apparently endless journey of the affairs of Jackson Barnett, long since deceased, through the highways and byways of our courts. This action arises out of the execution of an oil and gas lease on Barnett's allotted acreage which brought him wealth not only beyond the wildest dream of this simple, restricted Indian, but also beyond the wildest imagination of his more astute and greedy white brothers. Although he has been dead now for ten years, his champions still seek to protect his estate not only against spoliation from the operation under the lease that brought him all this wealth, but also against the claimed neglect of his statutory guardian, the United States of America. The story of Jackson Barnett has been told and retold throughout numerous legal publications. The facts are long, detailed and involved, and will be recounted here only insofar as is necessary to present the episode in this appeal.

Jackson Barnett was a full-blood, restricted Creek Indian. On March 5, 1912, he gave an oil and gas lease covering his allotted acreage. He could not write, and executed the lease by thumb-mark. The lease was in regular form and provided for the usual and customary royalty payments. Shortly thereafter Carl J. O'Hornett, who had been appointed his guardian in a state court proceeding, joined in the execution of the lease. The lease was approved by the Secretary of the Interior September 13, 1912. The appellees in this case are assignees and claim under the terms of this lease. The lease was a valuable one and has produced millions of dollars in oil.

In 1926 the appointment of O'Hornett as guardian was held to be void by the Supreme Court of Oklahoma. Shortly thereafter Fred T. Hildt, as next friend of Jackson Barnett, instituted an action against these appellees and their predecessors in interest in the United States District Court for the Northern District of Oklahoma, seeking to set aside the lease on the ground that Barnett was mentally incompetent at the time of its execution. This action was numbered 216 Equity. Appellees entered their appearance in this action. In addition thereto, they also filed a separate action against Barnett in which they asserted their lawful title to the lease and sought to quiet their title thereto. This action was numbered 260 Equity. The court appointed a guardian ad litem to represent Barnett in this action. The two causes of action were consolidated and tried as Consolidated No. 216 Equity. In the consolidated action, Barnett was represented by his next friend and by the guardian ad litem appointed by the court. The United States was notified of the pendency of each action in accordance with the act of April 12, 1926, and entered its appearance in each case.

On June 13, 1929, all the parties, having agreed to a settlement of the consolidated cause, prepared a written compromise agreement in which they set out not only the terms of the settlement but also the facts and questions of law involved in the controversy. These were set out in detail. The compromise settlement was approved by the guardian ad litem and by the next friend of Jackson Barnett. It was submitted to the court for approval by the guardian ad litem with the statement that it was for the best interests of Barnett and with the recommendation that it be approved by the court. It was approved in open court by the trial judge June 13, 1929, on condition, however, that it be approved by the Attorney General and the Secretary of the Interior of the United States. It was approved by these two officers and on July 11, 1929, the cause came on for hearing for final judgment. Judgment was entered in open court approving the settlement and quieting appellees' title to the lease. Appellees continued thereafter to operate the lease and to pay the royalties provided for therein.

Jackson Barnett died in 1934. An administrator was appointed for his estate. He instituted this action November 2, 1938, seeking to set aside the oil and gas lease, and for an accounting of the proceeds of the oil and gas taken from the premises. The basis for this action is that Barnett was at all times mentally incompetent and therefore could execute no valid oil and gas lease; that the ratification of the lease by O'Hornett was invalid because he never was the legal guardian of Barnett. It is argued that for these reasons the lease under which appellees claim is absolutely void.

█ Appellant recognizes that to be successful he must get around the judgment

in Consolidated No. 216 Equity quieting appellees' title to the oil and gas lease. This he seeks to do on the ground that the judgment is void because it constituted a consent decree. It is argued that neither a legal guardian, a guardian ad litem, nor a next friend of an incompetent person can consent to a compromise judgment, and that such a judgment is absolutely void. On the other hand, appellees urge with considerable force that appellant is without authority to maintain this action because the funds in question are restricted and as such do not constitute assets subject to administration by an administrator in a state court of competent jurisdiction. This contention is not without merit. Numerous other questions are raised, and a great number of authorities are cited in support thereof.

In the view we take of the matter, it is not necessary to the determination of the controversy to consider or pass upon these many issues. It is our opinion that the decree of the court was not a consent decree; that it was a judicial determination of the issues involved in the case in which it was entered, and is a valid and binding decree, and constitutes an effective bar to the prosecution of this case.

This is not a case in which the parties agreed as to the judgment which should be entered, submitted it to the court, and had the court pro forma enter the judgment upon which they had agreed, without an independent judicial inquiry and determination of the issues involved in the case. The order of June 13 recites that the compromise agreement was submitted to the court for its inspection and that having examined the same, as well as the petition of the guardian ad litem "and being otherwise sufficiently advised", the court adjudged and decreed that it be approved. The compromise settlement contained not only the agreement of the parties but also the facts in the case, together with the questions of law. It follows, therefore, that when the court made its examination of the issues it had before it all of the facts and questions of law set out in the agreement. In addition to this, the court informed itself outside of the facts set out in the written stipulation, and from all this determined the nature of the judgment which should be entered. The testimony of John M. Goldesberry and James B. Diggs in this case establishes that matters outside of the settlement agreement were considered by the trial court in reaching its judgment quieting the title.

It may be conceded for the purpose of this opinion that Jackson Barnett was mentally incompetent and could therefore not execute a valid oil and gas lease. It may also, for the same purpose, be conceded that the court erred in Consolidated Equity No. 216 in concluding that the ratification of the lease by the representatives of Barnett and its approval by the Attorney General and the Secretary of the Interior gave it validity. The fact, however, remains that the court did conclude that all these things that were done made the lease a valid and subsisting oil and gas lease. After a consideration of all these matters, the court entered judgment quieting appellees' title to the lease. The court had jurisdiction of the subject matter and of the parties to the controversy. Jurisdiction of the subject matter includes power to determine with binding effect every justiciable issue involved. Such jurisdiction is not limited to deciding issues correctly. Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587. An erroneous decision is just as binding as a correct one if no appeal is taken therefrom.

Many other reasons are given by appellant why nothing that was done prior to the judgment in Consolidated Equity No. 216, or why nothing done in that case, could give validity to the lease which it is asserted was void ab initio. It would serve no useful purpose to engage in a detailed discussion of these various points, because invariably we come back to the fact that the trial court in Consolidated Equity No. 216 concluded and decided that the lease was valid and quieted appellees' title thereto. This judgment became final and is binding upon all parties interested in this lease.

Affirmed.