STATE OF OKLAHOMA ex rel. J. Wood-
row WILSON, Plaintiff-Appellant,

v.

G. T. BLANKENSHIP, Attorney General,
State of Oklahoma, et al., Defendants-
Appellees.

STATE OF OKLAHOMA ex rel. J. Wood-
row WILSON, Plaintiff-Appellee,

v.

G. T. BLANKENSHIP, Attorney General,
State of Oklahoma, et al., Defendants,

and

Riffe Petroleum Company, Defendant-
Appellant.

Nos. 218–70, 219–70.

United States Court of Appeals,
Tenth Circuit.

Aug. 24, 1971.

Rehearing Denied in No. 218–70
Oct. 7, 1971.

Robert G. Grove, Oklahoma City, Okl. (Paul W. Brightmire, Tulsa, Okl., on the brief), for plaintiff-appellant.

H. Dale Cook, Oklahoma City, Okl., for G. T. Blankenship.

Truman B. Rucker, Tulsa, Okl. (J. P. Greve and John A. Ladner, Jr., Tulsa, Okl., on the brief), for Sun Oil Co.

Coleman Hayes, Oklahoma City, Okl. (Michael B. Silva, Oklahoma City, Okl., on the brief), for Kerr-McGee Corporation.

Richard B. McDermott, Tulsa, Okl. (S. E. Floren, Bartlesville, Okl., and Edward J. Fauss, Oklahoma City, Okl., on the brief), for Phillips Petroleum Co.

James R. Eagleton, Tulsa, Okl., for Baxter Land Corporation (formerly Inland Asphalt, Inc.) and Riffe Petroleum Co.

Larry Derryberry, Atty. Gen. of Oklahoma, and Paul C. Duncan, Asst. Atty. Gen., amici curiae.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

·This case involves a jurisdictional conflict between the state and federal courts in the Western District of Oklahoma. An action was filed in state court and was subsequently removed pursuant to 28 U.S.C. § 1441(b).[1] Following removal the plaintiff filed a motion to remand and this was denied. Thereafter, the several defendants filed

---

1. This section provides:

    (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or res-idence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

a motion for summary judgment on the merits of the case and this motion was granted. The trial court, 308 F.Supp. 870, determined that the removed action was ancillary to the prior suit which had been tried and in which judgment entered in the Western District of Oklahoma. On this appeal we are called upon to determine whether the district court had jurisdiction to remove the case from state court and to summarily determine it on its merits.

The Oklahoma state court action which was filed in the District Court of Oklahoma County by a taxpayer had its primary source at least in state statutes, §§ 372 and 373 of Title 62 O.S. 1961. Section 372 provides that government officials who direct the payment of money belonging to the State of Oklahoma in settlement of claims pursuant to an unauthorized contract or agreement are liable for damages resulting therefrom. The latter Section (373) authorizes taxpayers to sue on behalf of the State of Oklahoma seeking damages for losses occasioned by illegal transfers of state money. Double damages are recoverable.

The complaint (filed in the Oklahoma District Court and removed to the United States District Court for the Western District of Oklahoma) alleged that the former Attorney General, one G. T. Blankenship, lacked authority to settle a certain case which had been brought by the state against Allied Materials Corporation et al. for an amount less than the verdict and judgment rendered. As noted above, this cause was timely removed to the United States District Court.

The compromise complained about was an agreement by the Attorney General to accept on behalf of Oklahoma the sum of $2,500,000 in settlement of a judgment in the amount of $4,906,864.31, this sum being treble the amount of the jury verdict rendered, which award was $1,548,371.31 plus attorneys' fees and court costs. This treble damage judgment grew out of a federal antitrust case resulting from alleged price fixing conspiracies in connection with the sale of liquid asphalt to the Oklahoma State Highway Department. Under the terms of the compromise settlement the district court entered a remittitur in the amount of $2,112,063.93 and at the same time ordered the payment of $285,000 in attorneys' fees to the private lawyers who had represented the State of Oklahoma.

Double damages were sought under the cited Oklahoma statute for the losses suffered as a result of the alleged unauthorized settlement. The defendant oil companies are brought into it on the theory that they unlawfully conspired with the Attorney General to violate the statute. However, it is clear that the United States District Court for the Western District of Oklahoma approved the proposed settlement. The proposal had been informally presented to the court and on that occasion the judge stated that the verdict of the jury was higher than he would have awarded had he been trying the case. Subsequently, however, a remittitur was ordered on the basis that the verdict was excessive.

The amended complaint herein does not allege that the Attorney General acted fraudulently in entering into the agreement in question. The sole basis for the claim asserted is that he lacked authority to enter into the agreement. In this present case the district court specifically found that at the time of the settlement there existed an honest, good faith dispute between the parties as to the amount of money due to the State of Oklahoma and also a good faith dispute as to the hazard and doubtfulness of the validity of the claim against the defendants. Hence, it is clear from the record and from the oral arguments as well that there is no issue of fraud and, further, that the conspiracy charge is not made in any onerous sense. The district court did not determine that this present action in and of itself is based on federal law, but rather determined that

1. "This present action is ancillary to another suit in this Court instituted by

the then Attorney General on behalf of the State of Oklahoma entitled State of Oklahoma, ex rel. Charles Nesbitt, Attorney General v. Allied Materials Corporation, et al. No. 65–344 * * *."

2. That motions for a new trial and remittitur were pending at the time of the settlement and, hence, the claims of the State of Oklahoma were unliquidated, thus giving the Attorney General the authority to compromise the claims.

3. That the final judgment entered in that case constituted a bar under the doctrine of res judicata.

Appellants contest these conclusions of law on appeal, and further contend that summary judgment was improper as unresolved genuine, material issues of fact remain. The defendants have also raised the issue as to whether the appellant can, under the allegations of the state-court petition, maintain this action by virtue of the Oklahoma statutes relied on.

Since we have concluded that the district court lacked jurisdiction to remove the Oklahoma state action and therefore lacked the authority to decide the case on the merits, we need not go beyond the jurisdiction question. We are not therefore concerned here with the question considered by the trial court whether the judgment was or was not in a final posture, whereby the Attorney General may or may not have been precluded from settling it.

## I.

## VALIDITY OF THE REMOVAL

The threshold issue presented is whether the removal of the present action from the District Court of Oklahoma County to the United States District Court for the Western District of Oklahoma was valid and, therefore, whether the motion of the plaintiff to remand was properly denied.

The applicable statute is found in 28 U.S.C. § 1441 which provides as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants * * *.

Part (b) of that section describes the kinds of actions which are removable:

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

This is not a diversity of citizenship case, and so in order for the cause to have been removable, it would have had to have been a case within the original jurisdiction of the U. S. District Court on the basis of a federal question. This in turn is governed by 28 U.S.C. § 1331 which requires that the matter in controversy exceed the sum or value of $10,-000 and that it arise under the Constitution, laws or treaties of the United States. Several tests have been suggested for determining whether cases arise under the Constitution, laws or treaties of the United States. See Wright, Law of Federal Courts § 17 Pp. 54–55. Chief Justice Marshall in the very early Supreme Court case of Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 379, 5 L.Ed. 257, 285 (1821) said that "A case may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either."

Much later Mr. Justice Holmes formulated an often-quoted and simple test: "A suit arises under the law that creates the action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). (It was there held that there was no jurisdiction over a suit for damages to business from defendant's

statements that plaintiff was infringing defendant's patents).

■ More recently (in Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)), the Supreme Court per Justice Cardozo stated that to bring a case within the statute (§ 1331) "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." The opinion then goes on to state that:

> The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. *Id.;* King County v. Seattle School District [No. 1,], 263 U.S. 361, 363 364, 44 S.Ct. 127, 128, 68 L.Ed. 339. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto (New Orleans v. Benjamin, 153 U.S. 411, 424, 14 S.Ct. 905, 38 L.Ed. 764; Defiance Water Co. v. Defiance, 191 U.S. 184, 191, 24 S.Ct. 63, 48 L.Ed. 140; Joy v. St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776; City and County of Denver v. New York Trust Co., 229 U.S. 123, 133, 33 S.Ct. 657, 57 L.Ed. 1101), and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. (Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & Nashville R. Co., v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L. Ed. 126; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218). Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. Devine v. Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046; The Fair v. Kohler Die & Specialty Co., *supra.*

Throughout the opinion in *Gully* Justice Cardozo emphasized that the cause does not arise under federal law if the relationship is collateral and indirect rather than basic. In the *Gully* case it was held that the court lacked jurisdiction because it primarily arose under state law and did not become federal because a federal statute consented to the levying of the tax by the state. Thus, it is not enough that the suit could not have existed but for the federal statute. The case must be directly concerned with the construction of federal law and a determination of rights thereunder.

This Court has had occasion to apply these principles in Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767 (10th Cir. 1963). Speaking through Chief Judge Murrah it was said that a case does not so arise (under the Constitution, laws or treaties of the United States) unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of federal law upon the determination of which the result depends. It is further pointed out in the above opinion that

> The fact that a suit involves the construction and effect of a judgment of a Federal court or tribunal does not, for that reason, make it one arising under the Constitution or laws of the United States.

The judgment in that case was rendered by the Indian Claims Commission, and the lawsuit was a dispute as to the construction and effect of the judgment. Inasmuch as the case did not involve directly the statute under which the money was awarded but rather was concerned only with a declaration of rights, it was ruled that federal jurisdiction was not shown.

■ A corollary requirement (which is noted in *Gully*) is that the complaint must in and of itself disclose the existence of a case arising under the Con-

stitution or laws of the United States. It is not sufficient that the complaint anticipates that a federal question will be raised in the answer, and it is not enough that the petition for removal declares that it is a federal question. *See* Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); The Fair v. Kohler Die and Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913); and see Gully v. First National Bank in Meridian, *supra.*

■ In the case at bar removal jurisdiction fails because

*First,* this action could not have been originally filed in federal court since it does not arise under the Constitution, laws or treaties of the United States. The right asserted arises under the Constitution and laws of Oklahoma.[2] Therefore, it does not satisfy § 1441(a) or (b).

■ *Second,* it is true that the Oklahoma state case bears a considerable relationship to the prior federal case. As was true in *Gully,* this present action would not have arisen had there not been a federal case and a federal judgment. But as shown by *Gully* this is not a sufficient basis for federal removal jurisdiction.

■ *Third,* the present suit does not require a determination of rights under the Federal Constitution or under the federal antitrust laws. It may well be that this present case is ancillary, as the trial court determined, to the anti-

trust case in federal court, but this is not sufficient either. The present case is concerned with a federal judgment. It questions the validity of diverting $285,000 which had been awarded to the State of Oklahoma to the lawyers who had been appointed to try the case in place of the Attorney General. It also questions the validity of an agreement reducing the judgment from $4,900,000 to $2,500,000. But as was said by this Court in Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, *supra,* the fact that the suit involves the construction and effect of a federal judgment does not make it one arising under the federal law.

It is concluded that an indirect relationship to the federal litigation is not a sufficient basis for removal of the case from state to federal court. We are constrained to rule that the trial court erred in denying the plaintiff's motion to remand the case.

## II.

### INJUNCTION PROCEDURE

■ Defendants-appellees argue that injunctive relief was available under 28 U.S.C. § 2283.[3] Since the district court could have granted the injunction against state court action, so the argument goes, it follows that the case was properly removed. The fact is that we have before us a removal question. Injunctive relief under § 2283, *supra,* was not demanded or considered in the district court. Also, we cannot agree with the suggestion that the removal and injunction remedies may be in some way

2. The lawsuit is predicated on Title 62, §§ 372 and 373 of the Oklahoma statutes (1961). It is also contended that the Attorney General was without authority to agree to the remittitur and the payment of the attorney's fee to third parties, due to a prohibition contained in the Constitution of the State of Oklahoma, Art. V, Sec. 53, which provides:

Except as to tax and assessment charges against real estate * * *, the Legislature shall have no power to release or extinguish, or to authorize the

releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation or individual, to this State, or any county or other municipal corporation thereof.

3. Which section provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

interchangeable.[4] Removal and injunction are governed by different legal as well as policy standards and considerations.

Authority to enjoin state actions has been recognized throughout our history, and the federal courts exercised the authority somewhat freely despite the fact that the original provisions of the Judiciary Act were limited. It was not until 1941 that the Supreme Court adopted a restrictive rule. This was in Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), in which it was held that the federal court lacked power to enjoin relitigation of a state court *in personam* claim which had been successfully defended in federal court by the New York Life Insurance Company. The Court recognized only one exception, namely the instance in which the federal court had first obtained power over the res in an in rem suit.

In 1948 the present § 2283 was enacted. As noted, this prohibits the enjoining of state court proceedings, except as specifically authorized by Act of Congress, allowing such injunctions where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. This section is generally regarded as having been intended to overcome the *Toucey* doctrine so as to empower federal courts to enjoin relitigation in

state court of an *in personam* action.[5] This Court has repeatedly recognized that a federal court is empowered to enjoin relitigation in the interest of effectuating its judgment.[6]

However, it is also clear that when two allegedly conflicting lawsuits, one in state and one in federal court, present essentially different issues and different causes of action, an injunction will not lie to stay the state court proceedings. Southern California Petroleum Corp. v. Harper, 273 F.2d 715 (5th Cir. 1960). *See also* Pacific Livestock Co. v. Lewis, 217 F. 95, 97 (D.Or.1914); Nelson v. Camp, 191 F. 712 (5th Cir. 1911). The policy against federal interference with a state suit previously filed is of long standing and particularly applicable in a case where the equitable remedy of injunction is sought to be used as a substitute for a non-existent right of removal. Southern California Petroleum Corp. v. Harper, *supra,* 273 F.2d at 720.

Had the Oklahoma state court action been concerned with the issues which had been tried in the federal antitrust case, it would be clear that an effort was being made to relitigate, and injunction to protect the federal court judgment would in all probability have been proper. It is impossible, however, to construe as attempted relitigation an action which

---

4. Southern California Petroleum Corporation v. Harper, 273 F.2d 715 (5th Cir. 1960). The opinion of the court (Wisdom, J.) states:

    The policy against federal interference with a state suit previously filed is of long standing and is a necessary objective in maintaining a balanced federal-state relationship. It is particularly applicable in a case such as the instant case when apparently the complaint filed in the federal court seeks to use the declaratory judgment statute and the equitable remedy of injunction as substitutes for a non-existent right of removal. *Id.* at 720.

5. Jackson v. Carter Oil Co., 179 F.2d 524 (10th Cir.), cert. denied, 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597 (1950).

6. The proposition that federal courts have the power to enjoin the prosecution of a state court action to effectuate its judgment is well established. Williams v. Pacific Royalty Company, 247 F.2d 672, 675 (10th Cir. 1957); Berman v. Denver Tramway Corp., 197 F.2d 946 (10th Cir. 1952); Jackson v. Carter Oil Co., 179 F.2d 524 (10th Cir.), cert. denied, 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597 (1950). Accordingly, "the court has jurisdiction through means of a supplemental proceeding to enjoin the relitigation in a state court of a matter litigated, determined, and adjudicated by its valid decree regularly entered, if the result of the relitigation would be to destroy the effect of the decree rendered in the United States Court." Berman v. Denver Tramway Corp., *supra,* 197 F.2d at 950.

arises under state law, and which is concerned with new factual as well as legal issues—e. g. extent of authority of the Attorney General, possible violation of duty by him, finality or interlocutory posture of the stipulated judgment, etc. True, the state action has its source in the stipulation and remittitur, but this indirect relationship falls short of rendering the subsequent action identical in law and fact with the former action. At most or at best it is supplemental to it, and since it is a distinct cause of action based on different evidence, it is not barred by the doctrine of *res judicata*.[7]

As we view the record before us, the authority or lack of authority of the Attorney General did not come into focus when the settlement judgment was designed and entered. There is some indication from the fact that the remittitur technique was deemed necessary by the lawyers that there may have been some apprehension among them on this question, but the fact remains that the issue was not adjudicated either expressly or impliedly and so we have to conclude that the question remains open.

Finally, there is need to emphasize that we have not expressed an opinion on the merits of this state lawsuit. Our holding is limited to the jurisdiction questions, and having determined that the trial court lacked jurisdiction, the cause must be reversed with directions to remand the case to the Oklahoma district court.

In view of the above determination, the order with respect to Riffe Oil Company is also reversed subject to its motion of being interposed in state court.

7. [T]he doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

46 Am.Jur.2d, p. 558, § 394. However, it is also true that when a subsequent lawsuit involves an essentially different cause of action, based on different facts and circumstances, the former judgment does not preclude maintenance of the subsequent lawsuit under the doctrine of res judicata, and in such a case a prior judgment operates as an "estoppel" only with respect to matters *actually* litigated and determined. Security Ins. Co. of New Haven v. Johnson, 276 F.2d 182, 187 (10th Cir. 1960) ; Happy Elevator No. 2 v. Osage Const. Co., 209 F.2d 459, 461 (10th Cir. 1954) (and cases cited therein). And it has also been held that "(w)here a court incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly." Tidewater Oil Co. v. Jackson, 320 F.2d 157, 162 (10th Cir. 1963) (quoting from Restatement of the Law of Judgments, § 71).