**TOPPS CHEWING GUM, INC., Plaintiff,**

v.

**FLEER CORPORATION, Defendant.**

**Civ. A. No. 82–268.**

United States District Court,
D. Delaware.

Sept. 2, 1982.

Edward B. Maxwell, 2nd, of Young, Conaway, Stargatt & Taylor, Wilmington, Del.,

for plaintiff; James D. Crawford, Arlene Fickler of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.

R. Franklin Balotti of Richards, Layton & Finger, Wilmington, Del., for defendant; Matthew M. Strickler, and George E. Moore of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This action is before the Court on the plaintiff's Motion to Remand to the Court of Chancery of the State of Delaware. The plaintiff, Topps Chewing Gum, Inc. ("Topps"), originally filed this suit seeking restitution for the alleged unjust enrichment of the defendant, Fleer Corporation ("Fleer"), in the Court of Chancery. Fleer has sought to remove the case to this Court pursuant to 28 U.S.C. § 1441. Topps opposes such removal with the present motion. For the reasons hereinafter set forth, Topps' motion is granted and the case is remanded to the Court of Chancery.

## I. FACTUAL BACKGROUND

In *Fleer Corp. v. Topps Chewing Gum, Inc.,* 501 F.Supp. 485 (E.D.Pa.1980), Topps and the Major League Baseball Players Association ("MLBPA") were held to be in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. In orders filed in connection with his opinion, Judge Newcomer ordered Topps, *inter alia,* not to enter into any exclusive licensing agreement relating to baseball cards and to assign to the MLBPA a nonexclusive right to license the printing and distribution of baseball cards. The MLBPA was ordered to give careful consideration to licensing applications submitted by parties other than Topps and to grant a license to Fleer, provided that Fleer matched any final offer submitted by another party.

Pursuant to the orders of the District Court, Topps assigned a license to the MLBPA, and the MLBPA granted a license to Fleer in October of 1980. Fleer market-

ed baseball cards during the 1981 season and had sales in excess of four million dollars.

In August, 1981, the judgment of the District Court was reversed, the Court of Appeals holding that the defendants had not violated the Sherman Act. *Fleer Corp. v. Topps Chewing Gum, Inc.,* 658 F.2d 139 (3d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1715, 72 L.Ed.2d 137 (1982). The Third Circuit mandate issued to the District Court, and Judge Newcomer rescinded his orders in early 1982. Topps' Bill of Costs is still pending in the Eastern District of Pennsylvania.

Topps filed the present action in the Court of Chancery on April 23, 1982. The Complaint alleged that Fleer had been unjustly enriched by its sale of baseball cards in 1981. Topps sought an accounting of Fleer's profit and restitution in that amount.

Fleer filed its Petition for Removal to this Court on May 20, 1982. It averred that the case was one over which the Court has original jurisdiction under 28 U.S.C. § 1331 and which may be removed here pursuant to 28 U.S.C. § 1441. Topps filed the present motion on June 8, 1982, stating as the ground for remand that its Complaint on its face sets forth no claim or right arising under federal law.

## II. DISCUSSION

Topps argues in support of its Motion to Remand that this action requires no construction of the Constitution or federal law. The antitrust case involving Topps and Fleer has been terminated, and the District Court which heard the case did not expressly retain jurisdiction over any matters that might subsequently arise in connection with it. Topps characterizes its action as one for restitution of profits earned by Fleer in violation of Topps' rights. Since the defendant is a Delaware corporation and since Topps seeks relief under Delaware common law, Topps argues that the case was properly brought in the Delaware Court of Chancery.

Fleer contends that the present case involves a federal claim because it seeks damages arising from an erroneous injunction issued by a federal court. Topps' case for restitution is argued to be ancillary to and substantially intertwined with the federal antitrust action between Topps and Fleer.

The dispositive inquiry on the present motion is whether this is a case which may properly be removed to this Court. The removal statute, 28 U.S.C. § 1441, provides in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable is sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The standard for determining whether a claim is one "arising under" federal law and hence removable to federal court was articulated by Justice Cardozo in *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936) (citations omitted):

How and when a case arises "under the Constitution or laws of the United

States" has been much considered in the books. Some tests are well established. To bring a case within the [removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.

See also Skelly Oil Co. v. Phillips Co., 339 U.S. 667, 671–74, 70 S.Ct. 876, 878–880, 94 L.Ed. 1194 (1950); Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974).

In the present case, Topps' Complaint does not state a claim of which a right or immunity created by the Constitution or laws of the United States is an essential element. Rather, Topps has cast its action as one for restitution under the common law of the State of Delaware and filed it in the appropriate forum. No federal claim is stated. This is not a case over which this Court has original jurisdiction and thus there is no proper basis for its removal from the state court.

A similar conclusion was reached by the Supreme Court in Pan American Petroleum Corp. v. Superior Court of Delaware, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). In that case, Cities Service Gas Company had purchased natural gas from Pan American and other Kansas producers in accordance with a minimum price fixed by an order of the Corporation Commission of the State of Kansas. The price paid for gas by Cities Service was higher than that specified in contracts which preexisted the state order. The United States Supreme Court struck down the Kansas minimum-rate order on grounds of federal pre-emption, after its validity had been sustained by the Supreme Court of Kansas. Cities Service thereafter instituted an action for restitution in the Superior Court of Delaware, in which it sought almost eleven million dollars in overcharges paid pursuant to the Kansas order. The defendant producers filed a petition for a writ of prohibition, in which they argued that the federal Natural Gas Act precluded the plaintiff's claim from being heard in a state court.

The Supreme Court of Delaware upheld the jurisdiction of the state court, and the United States Supreme Court affirmed. Writing for the Court, Justice Frankfurter rejected the gas producers' argument that the Natural Gas Act deprived state courts of jurisdiction to hear a claim such as that brought by Cities Service in Delaware:

[Q]uestions of exclusive federal jurisdiction and ouster of jurisdiction of state courts are, under existing jurisdictional legislation, not determined by ultimate substantive issues of federal law. The answers depend on the particular claims a suitor makes in a state court—on how he casts his action. Since "the party who brings a suit is master to decide what law he will rely upon," The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 [33 S.Ct. 410, 411, 57 L.Ed. 716], the complaints in the Delaware Superior Court determine the nature of the suit before it. Their operative paragraphs demand recovery on alleged contracts to refund overpayments in the event of a judicial finding that the Kansas minimum-rate order was invalid, or for restitution of the overpayments by which petitioners have allegedly been unjustly enriched under the compulsion of the invalid Kansas order. No right is asserted under the Natural Gas Act.

\*     \*     \*     \*     \*     \*

The rights as asserted by Cities Service are traditional common-law claims. They do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas.

Pan American Corp. v. Superior Court of Delaware, 366 U.S. at 662–63, 81 S.Ct. at 1307–1308.

Fleer attempts to distinguish *Pan American* on the grounds that it did not involve the removal power of the federal courts or a claim based upon an erroneous federal injunction. It argues that the *Pan American* holding is limited to a case in which a state court hears a claim for restitution after reversal of a state court decree, rather than a federal court decree. The Court disagrees. The differences in the facts underlying *Pan American* and the present case do not detract from the validity of the jurisdictional principles set forth by the Court or their applicability here.

The Court finds further support for its holding in *Oklahoma ex rel. Wilson v. Blankenship,* 447 F.2d 687 (10th Cir. 1971), *cert. denied* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972). In *Blankenship,* a taxpayer had brought an action in an Oklahoma state court seeking damages from the state attorney general for the latter's allegedly unauthorized settlement of a federal antitrust case. The action was removed to federal court, the jurisdiction of which was based on the court's finding that the action was ancillary to the antitrust action. The Tenth Circuit reversed the trial court's grant of summary judgment for the defendants, holding that the federal courts lacked jurisdiction over the case and that the trial court had erred in denying the plaintiff's motion to remand. Citing *Gully v. First National Bank, supra,* the Circuit Court stated that for a case to arise under federal law, it "must be directly concerned with the construction of federal law and a determination of rights thereunder." *State of Oklahoma ex rel. Wilson v. Blankenship,* 447 F.2d at 691. The Court further stated that "the present suit does not require a determination of rights under the Federal Constitution or under the federal antitrust laws. It may well be that this present case is ancillary, as the trial court determined, to the antitrust case in federal court, but this is not sufficient either... [T]he fact that the suit involves the construction and effect of a federal judgment does not make it one arising under the federal law." *Id.* at 692.

Fleer's reliance on *Arkadelphia Milling Co. v. St. Louis Southwestern Railway Co.,* 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919) is misplaced. In *Arkadelphia,* the federal court sitting in the Eastern District of Arkansas enjoined the enforcement of a tariff imposed by the State Railroad Commission on rail freight. The court expressly retained jurisdiction over the subject matter of and parties to the action. The Supreme Court ultimately reversed. The District Court entered decrees dissolving its injunctions and referring to a master the matter of the damages alleged to have been suffered by the railroad commissioners as public representatives. In holding that a direct appeal lay to it from the final decrees of the District Court, the Supreme Court stated that the jurisdiction of the lower court over the damages issue derived from that issue's close relation to the main causes and from the court's express retention of jurisdiction:

> "The proceeding out of which the decree now in question arose was not merely ancillary but was in effect a part of the main causes, taken for the purpose of carrying into effect the decrees of this court reversing the final decrees in the main causes and, at the same time, for the purpose of giving effect to a reservation of jurisdiction by the court below as contained in those final decrees."

*Arkadelphia Milling Co. v. St. Louis Southwestern Railway Co.,* 249 U.S. at 142, 39 S.Ct. at 241.

In the present case, Judge Newcomer did not retain jurisdiction over matters that might arise between Fleer and Topps in connection with the opinion and orders he entered in their antitrust action. Nor is the restitution action against Fleer, initiated by the plaintiff in a proper forum, a part of the main federal cause as in *Arkadelphia,* where removal from a state court was not a factor.

The Court cannot agree with the result reached in *Johnson v. Alexandria Scrap Corp.,* 445 F.Supp. 1171 (D.Md.1977), in which a claim for restitution of money paid pursuant to an erroneous federal injunction was held to state a federal question "in and

of itself." 445 F.Supp. at 1173. The *Johnson* court declined to remand the restitution action to the state court in which it had been brought, sustaining its own pendent jurisdiction over the case: "Simply stated, a federal district court has jurisdiction in the same case or in a subsequent case to correct its own errors, particularly when it is directed to do so by the Supreme Court of the United States." The court did not discuss the elements of a federal question in other than conclusory terms, and relied primarily on *Arkadelphia, supra,* which this Court finds distinguishable from both *Johnson* and the case presently before it.

The Court finds that the Complaint filed by Topps in the Court of Chancery does not on its face state a claim arising under federal law. For that reason, there is no proper ground for its removal to this Court. The plaintiff's motion is granted and the case will be remanded to the Court of Chancery of the State of Delaware.

An Order will be entered in accordance with this Opinion.