**NORTHWEST CENTRAL PIPELINE CORPORATION, a Delaware corporation, Plaintiff,**

v.

**MESA PETROLEUM CO., a Delaware corporation, and Tenneco Oil Company, a Delaware corporation, Defendants.**

**Civ. A. No. 83–282 MMS.**

United States District Court, D. Delaware.

Dec. 30, 1983.

William O. LaMotte, III, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff; David K. Watkiss, Watkiss & Campbell, Salt Lake City, Utah, of counsel.

R. Franklin Balotti, and Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, Del., for defendants; Stanley L. Cunningham, and John N. Hermes, McAfee & Taft, Oklahoma City, Okl., of counsel.

OPINION

MURRAY M. SCHWARTZ, District Judge.

The parties in this action disagree over the meaning and effect of a natural gas sales contract. When the dispute arose, plaintiff filed this action in Delaware Chancery Court. Defendants countered by filing the counterpart of this action in the United States District Court for the Western District of Oklahoma, by removing plaintiff's Chancery Court action to this Court, and by moving to transfer this action to the Western District of Oklahoma. Plaintiff responded by filing a motion to remand this action to the Chancery Court.

Briefing and oral argument were held on defendants' transfer motion and on plaintiff's motion to remand. Because this case was improperly removed, discussion will be limited to plaintiff's motion to remand.

I. *Background*

Plaintiff Northwest Central Pipeline Corp. ("Northwest"), a Delaware corporation, is a purchaser, transporter and seller of natural gas. Defendants Mesa Petroleum Co. ("Mesa") and Tenneco Oil Co. ("Tenneco"), also Delaware corporations, produce and sell natural gas. Mesa and Tenneco each own a one-half interest in Tema Oil Co. ("Tema"), a partnership organized under the laws of Texas. Northwest and Tema are successors in interest to a natural gas sales contract entered into in 1948 between Cities Service Gas Co. ("Cities Service"), as buyer, and United Producing Co., Inc. ("United"), as seller.

Two clauses in that 1948 sales contract are important in this litigation—the "take-or-pay" clause and the "withdrawal" clause. Both come into effect if the buyer fails to purchase in one contract year [1] the minimum quantity of natural gas set forth in the contract. In the event of such a shortfall, the buyer has two options. First, under the take-or-pay clause, it may within sixty days of the close of the contract year pay for the deficiency in its purchases and

[1]. A contract year begins on December 23 and ends on December 22.

accept delivery of the gas during the succeeding contract year. Second, it may choose not to pay for the deficiency within sixty days, and provide the seller the right under the withdrawal clause to remove dedicated acreage from the sales contract in proportion to the buyer's deficiency in purchases.

An historical perspective is essential to understand the reason for the current controversy. In 1963 and 1964 Cities Service failed to take or pay for the contractual minimum of gas. Ashland Oil & Refining Co. ("Ashland"), one of Tema's predecessors in interest to the contract,[2] sought to remove dedicated acreage under the withdrawal provision of the contract. The Federal Power Commission, however, refused Ashland permission to withdraw acreage from dedication. Federal Power Commission approval was necessary because in 1954 the Supreme Court held in *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954), that independent natural gas producers selling gas to interstate pipeline companies are subject to Federal Power Commission regulation. Ashland then sued Cities Service for breach of contract. The trial court granted summary judgment in favor of Cities Service but the Tenth Circuit Court of Appeals reversed. In *Ashland Oil & Refining Co. v. Cities Service Gas Co.*, 462 F.2d 204 (10th Cir.1972), the Court of Appeals held that the withdrawal provision was effectively removed from the 1948 contract because performance under it was rendered impossible by the intervening Supreme Court decision in *Phillips Petroleum*.

In 1978 Congress enacted the Natural Gas Policy Act ("N.G.P.A."), 15 U.S.C. §§ 3301 *et seq.* This Act establishes certain statutory ceilings on first sales of natural gas. Northwest contends that one effect of these price ceilings may be to render the parties' take-or-pay clause invalid. Gas paid for but not taken in one contract year and which is not accepted for delivery in the next contract year, Northwest contends, would result in a price exceeding the maximum lawful price under the N.G.P.A.

The immediate facts giving rise to the present suit are alleged by plaintiff as follows. In the 1982 contract year Cities Service, and then Northwest which became its successor as of November 12, 1982, failed to take the required minimum volume of gas. On February 16, 1983, Northwest informed Mesa (on behalf of Tema) that it would pay $4,556,780.00 for its deficiency under the take-or-pay clause but, because of its concerns about the lawfulness of that clause, would make the payment under protest, "reserving the right to recover the payment, or a portion thereof, should it ultimately be determined to be unlawful." (Doc. 1, Ex. "A" at ¶ 22). Mesa responded by letter on February 17, 1983, that it would not accept a restrictive endorsement or conditional tender. Northwest attempted a second tender, on February 18, 1983, this time drafting an unrestricted check, "in full payment and satisfaction of Northwest Central's take-or-pay deficiency," (*Id.* at ¶ 24) but accompanied by a voucher stating that the tender was subject to Northwest's right to recover payment if the clause is determined to be unlawful. The sixty-day take-or-pay period expired on February 20, 1983. Two days later, Mesa wrote that it considered Northwest in complete default. On February 24, 1983, Northwest removed any condition from its February 18, 1983, tender. Northwest, however, determined that it had miscalculated the amount of its deficiency and on February 25, mailed Tema a check for an extra $2,111,463.38 to reflect the deficiency. On March 2, 1983, Mesa returned both the February 18 and February 25 checks. Northwest tendered a new check for $6,668,243.38 on March 4th, and this check was rejected by Mesa on March 7. Settlement discussions then took place but no agreement was reached. Finally, on March 24, 1983, Mesa notified Northwest that it would remove approximately fifty-seven percent of dedicated acreage from the sales

---

**2.** Ashland had succeeded to United's interest in 1963.

contract pursuant to the contract's withdrawal clause.

Northwest filed its Delaware Chancery Court action on April 14, 1983. On the next day, Tema filed its federal suit in the Western District of Oklahoma. Defendants Mesa and Tenneco removed the Chancery Court action to this Court pursuant to 28 U.S.C. § 1446 on May 13, 1983. They simultaneously moved to transfer. On August 11, 1983, Judge West of the United States District Court for the Western District of Oklahoma dismissed in its entirety Tema's action in that court.[3]

## II. *The Complaint*

Northwest's complaint filed in the Delaware Chancery Court asks for declaratory and injunctive relief. It alleges three "claims" and requests various specific forms of relief. The first claim asserts that Northwest's tender was valid under the contract despite any alleged conditions or restrictions placed on it and despite Northwest's initial payment of an incorrect amount. In addition, Northwest argues in claim one that Tema is estopped from objecting to the timeliness of the tender. Tema's unlawful refusal to accept Northwest's tender, Northwest asserts, is not ground for withdrawal of acreage. In claim two Northwest contends that defendants are bound by the *Ashland* decision and may not enforce provisions of the contract held impossible to perform in that case. Claim three presents Northwest's contention that if it were required to pay for gas under the take-or-pay clause which it did not use in contract year 1982 and which it could not take in contract year 1983, its purchase price would exceed the maximum lawful price for gas in violation of section 504(a) of the N.G.P.A.

Northwest requested the Chancery Court to render the following judgment:

(1) that Northwest Central has fulfilled all its obligations under the contract;

(2) that Northwest Central's tender of February 18, 1983 was valid;

(3) that defendant's refusal to accept Northwest Central's tender of February 18, 1983, or its subsequent tenders, violated the terms of the contract;

(4) that defendants ... are enjoined and prohibited from withdrawing acreage from dedication and from taking any action to further such withdrawal;

(5) that defendants ... are enjoined and prohibited from causing Tema to withdraw acreage from dedication and from taking any action to further such withdrawal;

(6) that the provision of the contract permitting withdrawal of acreage for Northwest Central's failure to pay for deficiencies below contract year minimum volumes is unenforceable;

(7) that defendants ... are bound by the Tenth Circuit's decision in *Ashland Oil;* and

(8) that the take-or-pay provision of the contract is unenforceable because its effect is to require Northwest Central to pay a price in excess of the applicable NGPA maximum lawful ceiling price.

(Doc. 1, ex. A at 13–14).

## III. *Motion to Remand*

An action brought in state court may be removed to federal district court only if the district court has original jurisdiction over a claim raised in the complaint. 28 U.S.C. § 1441. If a case has been improperly removed because it was not within the district court's original jurisdiction, the district court must remand it to the state court from which it was removed. 28 U.S.C. § 1447(c). Because the present controversy lacks diversity of citizenship between the parties, this Court may retain jurisdiction only if the claims present a federal question. The precise question the Court must answer is whether Northwest's lawsuit, filed in Delaware Chancery Court, is a civil action "arising under the Constitu-

---

**3.** *Tema Oil Co. v. Northwest Central Pipeline Corp.,* No. CIV–83–828–W (W.D.Okl. Aug. 11, 1983) (order of dismissal).

tion, laws, or treaties of the United States." 28 U.S.C. § 1331.[4]

The "well-pleaded complaint" doctrine requires this Court to determine whether a federal cause of action has been alleged "from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 103 S.Ct. at 2846, *quoting Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914). Even if the plaintiff's allegations "show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Furthermore, even where the defendant's violation of state law is undisputed "and both parties admit that the only question for decision is raised by a federal preemption defense," *Franchise Tax Board,* 103 S.Ct. at 2848, the well-pleaded complaint rule still deprives a federal court of jurisdiction. *Id.; cf. Trent Realty Associates v. First Federal Savings & Loan Association,* 657 F.2d 29, 34–35 (3d Cir.1981).

█ Application of the well-pleaded complaint rule is particularly difficult in declaratory judgment actions. The Supreme Court was faced with a declaratory judgment action in *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Skelly, a seller of natural gas, had notified Phillips that it would terminate their natural gas sales contract. Phillips brought a federal declaratory judgment action seeking a declaration that the contract was still in effect.

The validity of Skelly's action turned on whether the Federal Power Commission had issued a valid certificate of public convenience and necessity. If no valid certificate was issued, then Skelly's termination was proper under the contract. The Supreme Court held that under the well-pleaded complaint rule, no federal cause of action was alleged. Prior to enactment of the Declaratory Judgment Act, the Supreme Court explained, the plaintiff could have brought only a state law breach of contract or specific performance suit, and any federal issues would have arisen only as defenses. The claim, therefore, did not "arise under" the laws of the United States. 339 U.S. at 671–72, 70 S.Ct. at 878–79. *See also Gully v. First National Bank,* 299 U.S. 109, 117, 57 S.Ct. 96, 81 L.Ed. 70 (1936). As recently explained by the Supreme Court,

> *Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'

*Franchise Tax Board,* 103 S.Ct. at 2850, *quoting* 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2767, at 744–745 (2d ed. 1983).

*Skelly,* unlike the instant case, was filed initially in federal court. One issue left unanswered by that case was whether the well-pleaded complaint rule governed declaratory judgment actions removed to federal court from state court. Last term, in *Franchise Tax Board,* the Supreme Court answered that question affirmatively. Declaratory judgment actions brought initially in state court, and removed under section 1441, are treated identically to cases filed originally in federal court. 103 S.Ct. at 2851. Any other rule, the Supreme Court

---

**4.** It may appear "odd," the Supreme Court has noted, that "for purposes of determining whether removal was proper, we analyze a claim brought under state law, in state court, by a party who has continuously objected to district court jurisdiction over its case, as if that party had been trying to get original federal court jurisdiction all along." *Franchise Tax Board v.*

*Construction Laborers Vacation Trust,* — U.S. ——, 103 S.Ct. 2841, 2851 n. 18, 77 L.Ed.2d 420 (1983). The Court rationalized this "irony," however, as "a more-or-less constant feature of the removal statute, under which a case is removable if a federal district court could have taken jurisdiction had the same complaint been filed." *Id.*

explained, would render the Federal Declaratory Judgment Act "a dead letter." *Id.*

> For any case in which a state declaratory judgment action was available, litigants could get into federal court for a declaratory judgment despite our interpretation of § 2201, simply by pleading an adequate state claim for a declaration of federal law.

*Id.*

The Third Circuit Court of Appeals had previously assumed that *Skelly Oil* applied to removal jurisdiction. In *La Chemise Lacoste v. Alligator Co.,* 506 F.2d 339 (3d Cir.1974), *cert. denied,* 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975), the Court of Appeals dismissed for lack of jurisdiction a case that had been removed from the Delaware Chancery Court. The plaintiff had sought a declaration that it was the lawful owner of a now well known crocodile trademark and that it had exclusive use of that emblem. Looking only at the face of the complaint filed in Delaware, which alleged no federal causes of action, the appellate court dismissed the case even though federal trademark law might well have to have been decided in the case. *See* 506 F.2d at 345–46. *See also Trent Realty Associates v. First Federal Savings & Loan Association,* 657 F.2d at 33 (applying *La Chemise Lacoste* ).

■ Likewise, Northwest's suit does not arise under federal law even though the Delaware Chancery Court will probably be compelled to interpret federal law in rendering its decision. Mesa and Tenneco argue that all three of Northwest's counts raise federal as well as state law questions. They assert that because count one alleges that the contract was governed by "all applicable state and federal law," a court will necessarily have to apply the Natural

Gas Policy Act and the Natural Gas Act ("N.G.A."). Count two, defendants contend, will require a determination of the impact of the Natural Gas Act on the *Ashland* case. Count three, they argue, presents a federal question on its face.

The Court disagrees that claims one and two establish federal question jurisdiction. Northwest's first two claims rest soundly in state contract law. Claim one seeks a determination that Northwest's tender was valid under the contract. That, of course, is a state law question. Claim two seeks a determination of the res judicata effect on the contract of a previous federal diversity jurisdiction case. That, too, is a state law question. *See Fajen v. Foundation Reserve Insurance Co.,* 683 F.2d 331, 334 (10th Cir.1982) (fact that suit involves construction and effect of federal judgment does not make it one arising under federal law); *Oklahoma ex rel. Wilson v. Blankenship,* 447 F.2d 687, 692 (10th Cir.1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972) (same).[5] Although the application of the N.G.A. or N.G.P.A. to this contract probably will arise in defense to plaintiff's state law contract claims, that eventuality does not convert those contract claims into federal claims. *See Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. at 152, 29 S.Ct. at 43.

Count three, unlike the first two counts, expressly asks for a declaration of rights under federal law. That count, however, is purely anticipatory. Claim three basically charges that the take-or-pay provision is invalid under federal law. The allegations in count three provide no basis for affirmative relief under any private federal cause of action. Northwest would thus be unable to raise its federal claim offensively in a traditional coercive action. The claim, absent a declaratory judgment statute, would

---

5. Senior Judge Wright relied on the *Blankenship* case in *Topps Chewing Gum, Inc. v. Fleer Corp.,* 547 F.Supp. 102 (D.Del.1982). There the plaintiff sought in state court to recover profits earned by its competitor during the interval between issuance of a district court decision that held plaintiff's contract with the Major League Baseball Association illegal and the issuance of an appellate opinion reversing that

decision. The defendant removed to federal court, contending that the case "involve[d] a federal claim because it seeks damages arising from an erroneous injunction issued by a federal court." 547 F.Supp. at 103. The court remanded, holding that plaintiff's claim was a common law claim for restitution, not a claim arising under federal law. *Id.* at 105–06.

arise only as a defense to a breach of contract action brought by Mesa and Tenneco to collect payments for deficiencies. Under *Skelly Oil,* therefore, that declaratory claim does not arise under the laws of the United States. *See Franchise Tax Board,* 103 S.Ct. at 2850.[6]

Defendants argue that this Court has jurisdiction under *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), because Northwest has sought to prevent defendants from maintaining their own federal causes of action against Northwest. *Wycoff* was brought by an intrastate film transporter who sought a declaration that the state regulatory commission could not prevent it from transporting over routes authorized by the Interstate Commerce Commission. The action was dismissed on ripeness grounds. After reaching its ripeness conclusion, the Supreme Court pronounced its well known *Wycoff* dictum:

> In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory

judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, *it is the character of the threatened action, and not of the defense,* which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim.

344 U.S. at 248, 73 S.Ct. at 242.[7] Thus, if a declaratory plaintiff seeks to fend off litigation of a federal nature by the declaratory defendant, a court has jurisdiction even though the plaintiff is anticipating a federal defense. *See Franchise Tax Board,* 103 S.Ct. at 2851 & n. 19.

The Third Circuit Court of Appeals held in *La Chemise Lacoste,* however, that the *Wycoff* rule does not apply to removal cases.[8] *La Chemise Lacoste,* 506 F.2d at 344–45. It is unclear after *Franchise Tax Board* whether that aspect of *La Chemise Lacoste* is still good law. *Franchise Tax Board* can be read in two ways. On the

---

**6.** Contrary to defendants' contentions, *Westmoreland Hospital Association v. Blue Cross,* 605 F.2d 119 (3d Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980), does not supply a basis for jurisdiction. That case involved allegations by plaintiff of federal grounds for relief that were not anticipatory in nature but were affirmative (although alternative) in nature. *See Westmoreland,* 605 F.2d at 123–24.

**7.** This dictum, the Supreme Court stated last term, explains the federal court practice of hearing declaratory judgment actions by alleged patent infringers. *Franchise Tax Board,* 103 S.Ct. at 2851 n. 19. In those cases, "an infringement suit by the declaratory judgment defendant would raise a federal question over which the federal courts have exclusive jurisdiction." *Id.*

**8.** Thus, the holding in *La Chemise Lacoste,* discussed *supra* at 1500, that no federal claims appeared on the face of the complaint was merely alternative. The appellate court's primary holding in that case was that the *Wycoff*

dictum should not be applied in a removal case. The court held that even were the plaintiff's complaint read to allege a threatened federal trademark infringement suit by the defendant, that allegation was merely anticipatory in nature and could not serve as a basis for removal jurisdiction. To apply *Wycoff* to a removal case, the Court reasoned, would produce an anomalous result:

> A premise of the *Wycoff* teaching is that "in many actions for declaratory judgment, the realistic position of the parties is reversed." 344 U.S. at 248, 73 S.Ct. at 242. The defendant is viewed as the "functional plaintiff." *See Developments in the Law—Declaratory Judgments—1941–1949,* 62 Harv.L.Rev. 787, 802–803 (1949). Yet it is axiomatic that a plaintiff may not remove an action to federal court. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). To allow a defendant in a state declaratory action to remove, therefore, would accord to "functional plaintiffs" a right not given to the plaintiffs.

506 F.2d at 343 n. 4.

one hand, the Supreme Court's general discussion strongly implies that removal cases should be treated identically to original jurisdiction cases, including application of the *Wycoff* rule. *See* p. 1499 *supra*. On the other hand, on the facts of the case before it, where the declaratory plaintiff was a sovereign state seeking a declaration of the validity of its regulations against claims of federal preemption, the Court declined to apply the *Wycoff* rule, making any broader statements unnecessary to its holding.[9]

The Court need not decide whether *Franchise Tax Board* overrules the *Wycoff* aspect of *La Chemise Lacoste*. Even under *Wycoff*, Northwest's complaint does not raise a federal question. Defendants argue that their threatened actions are indisputably federal in nature because they have asserted "federal" counterclaims in this case and have brought "federal" claims in the Western District of Oklahoma.[10] The flaw in this argument is that a court can look only at the plaintiff's initial

9. In *Franchise Tax Board* the State of California had sued in state court for a declaration that the Employment Retirement Security Act of 1974 ("ERISA") did not preempt its right to tax the defendant, a "welfare benefit plan" under ERISA. Even though the defendant might have been able to bring a federal coercive lawsuit against the state under ERISA, the Supreme Court found no removal jurisdiction. This was a suit, the Court explained, brought by a state "to declare the validity of [its] regulations despite possibly conflicting federal law." 103 S.Ct. at 2852. "States are not significantly prejudiced," reasoned the Court, "by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation." *Id.* This type of lawsuit, the Court stated, is "removed from the spirit of necessity and careful limitation of district court jurisdiction" that resulted in the *Wycoff* rule. *Id.* at 2853. Thus, although *Franchise Tax Board's* analysis strongly implies that the *Wycoff* dictum ordinarily would apply to a removal action, such a conclusion was not necessary to its decision.

10. Defendants argue that under the "filed rate doctrine" and *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981), defendants would have a federal cause of action to recover amounts due under the sales contract because Northwest has failed to comply with "its federally filed rate schedule and the certificate issued by the Federal Power Commission." Doc. 16 at 21. In addition, they contend that they have a federal cause of action to enjoin Northwest's continuing violation of section 7(b) of the Natural Gas Act arising out of Northwest's failure to take-or-pay for its minimum volume under the contract. Doc. 16 at 23. This failure, defendants argue, constitutes "abandonment" under section 7(b).

It is doubtful whether either the N.G.P.A. or N.G.A. would provide defendants with a federal claim to litigate what is, in essence, a dispute over their sales contract with plaintiff. *See e.g. Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 128, 94 S.Ct. 1002, 1004, 39 L.Ed.2d 209 (1974); *Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961); *Superior Oil Co. v. Pioneer*

*Corp.*, 706 F.2d 603, 606 (5th Cir.1983); *Pennzoil Co. v. Federal Energy Regulatory Commission*, 645 F.2d 360, 384 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). *Cf. Clark v. Gulf Oil Corp.*, 570 F.2d 1138 (3d Cir.1977), *cert. denied*, 435 U.S. 970, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978). *Arkansas Louisiana Gas* held only that a state court could not award damages in a breach of contract suit where the effect of that award would be to impose a rate that was unapproved by the FERC. *See Arkansas Louisiana Gas*, 453 U.S. at 578–79, 101 S.Ct. at 2930–31. The Supreme Court there reaffirmed the proposition of *Skelly Oil* and *Pan American Petroleum* that contract law governed natural gas contract disputes. *Arkansas Louisiana Gas*, 453 U.S. at 582–83 n. 12, 101 S.Ct. at 2932–33 n. 12. Thus, defendants' reliance on *Arkansas Louisiana Gas* as a basis of federal question jurisdiction is misplaced.

Of more concern is the Supreme Court's memorandum, per curiam opinion in *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, — U.S. ——, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). There the Supreme Court reversed a decision by the Ninth Circuit Court of Appeals which held that no federal cause of action existed under the Interstate Commerce Act for a failure to pay for services as required by tariffs filed with the ICC. The Supreme Court, relying on the case of *Louisville & Nashville Railroad v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918), held that a federal cause of action did exist. This result appears incongruous with the cases decided under the N.G.A. and N.G.P.A. The Supreme Court did not discuss those cases in *Thurston* and it may be that the Court believes a different rule should apply under the natural gas statutes.

The Western District of Oklahoma has already rejected similar "federal" claims raised there by Tema. With regard to Tema's filed rate doctrine claim, the court explained that the suit was "simply a contract action brought by Tema to enforce the provisions of its contract with NWC." *Tema Oil Co. v. Northwest Pipeline Corp.*, No. CIV–83–828–W, slip op. at 9 (Aug. 11, 1973). The court also rejected defendant's claim that a federal cause of action exists under section 7(b) of the NGA. *Id.* at 10. Finally, the court held that Tema's request for a determina-

pleading to determine the character of an alleged threatened action. For example, in reaching an alternative holding in *La Chemise Lacoste*, the Court of Appeals declined to find jurisdiction under *Wycoff* even though the defendant might very likely have brought a federal trademark infringement suit. *La Chemise Lacoste*, 506 F.2d at 345. The defendant could have brought three types of actions, the court stated: "a. state common law trademark infringement suit, an unfair competition suit under state law, or an infringement suit based on its federally registered trademarks." *Id.* at 345–46. Lacoste's complaint, however, did not "specifically assert that Alligator would bring an action based on its federal rights." *Id.* at 345. *See also Care Corp. v. Kiddie Care Corp.*, 344 F.Supp. 12 (D.Del.1972) (remanding to state court where plaintiff's state declaratory judgment action alleged only a threatened state claim, even though plaintiff could have alleged a threatened federal claim).

Likewise, in this case, Northwest nowhere alleges that defendants threatened a suit under federal law, nor did they disguise what was an obvious and imminent threat of a federal lawsuit.[11] Defendants' Western District of Oklahoma claims and counterclaims here arose only after plaintiff drafted and filed its complaint in Delaware Chancery Court. Although this Court cannot ignore the fact that defendants filed their Western District of Oklahoma action only one day after plaintiff's action was filed, the threat of a federal lawsuit was far from imminent when Northwest brought suit in Chancery Court. Indeed, the Western District of Oklahoma has dismissed defendants' "federal" claims for lack of jurisdiction. *See* note 8, *supra.* The Court cannot hold, as defendants would like it to, that plaintiff's suit necessarily anticipated the "federal" causes of

action raised in defendants' counterclaims and in their separate Oklahoma litigation.

For the reasons stated above, plaintiff's motion to remand will be granted. An appropriate order will issue.

tion that Northwest is bound by the *Ashland Oil* case merely anticipated a defense to Northwest's position regarding "the validity of certain provisions of the contract." *Id.* at 12. Because of this Court's holding that plaintiff's complaint did not allege a threatened federal action by defendants, it need not address the merits of the Western District of Oklahoma decision nor plaintiff's argument that the Western District of

Oklahoma case has preclusive effect in this Court. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4436 (1981).

11. *See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) (plaintiff cannot avoid removal jurisdiction by artfully drafting federal claims as state law claims).